FRED R. HARLEE *v.* THE FEDERAL FINANCE CORPORATION OF AMERICA, a Delaware corporation.

(*November* 20, 1930.)

PENNEWILL, C. J., RICE and RODNEY, J. J., sitting.

*P. Warren Green* for plaintiff.

*William Prickett* for defendant.

Superior Court for New Castle County, No. 5, November Term, 1929.

Rice, J., delivering the opinion of the court:

The demurrer raises the question whether, after repossession by the seller, under the provisions of Section 18 of the Uni-

form Conditional Sales Act, the conditional vendee may redeem the article by the tender of an amount of money sufficient to cover the installments in default together with the expenses of repossession, storage, etc., or whether to redeem he may, by the conditional sales contract, be required to pay the entire balance of the purchase price due under the acceleration clause of the contract before he is permitted to redeem the article.

To determine the question, it is necessary to consider particularly the following sections of the Uniform Conditional Sales Act of this state:

"Section 16. (Retaking Possession) When the buyer shall be in default in the payment of any sum due under the contract, or in the performance of any other condition which the contract requires him to perform in order to obtain the property in the goods, or in the performance of any promise, the breach of which is by the contract expressly made a ground for the retaking of the goods, the seller may retake possession thereof. Unless the goods can be retaken without breach of the peace, they shall be retaken by legal process; but nothing herein shall be construed to authorize a violation of the criminal law.

"Section 17. (Notice of Intention to Retake) Not more than forty nor less than twenty days prior to the retaking, the seller, if he so desires, may serve upon the buyer personally or by registered mail a notice of intention to retake the goods on account of the buyer's default. The notice shall state the default and the period at the end of which the goods will be retaken, and shall briefly and clearly state what the buyer's rights under this act will be in case they are retaken. If the notice is so served and the buyer does not perform the obligations in which he has made default before the day set for retaking, the seller may retake the goods and hold them subject to the provisions of Sections 19, 20, 21, 22 and 23 regarding resale, but without any right of redemption.

"Section 18. (Redemption) If the seller does not give the notice of intention to retake described in Section 17, he shall retain the goods for ten days after retaking within the State in which they were located when retaken, during which period the buyer, upon payment or tender of the amount due under the contract at the time of retaking and interest, or upon performance or tender of performance of such other condition as may be named in the contract as precedent to the passage of the property in the goods, or upon performance or tender of performance of any other promise for the breach of which the goods were retaken, and upon payment of the expenses of retaking, keeping and storage, may redeem the goods and become entitled to take possession of them and to continue in the performance of the contract as if no default had occurred. Upon written demand delivered personally or by registered mail by the buyer, the seller shall furnish to the buyer a written statement of the sum due under the contract and the expense of retaking, keeping and storage. For failure to furnish such statement within a reasonable time after demand, the seller shall forfeit to the buyer Ten Dollars ($10.00) and also be liable to him for all damages suffered because of such failure. If the goods are perishable so that retention for ten days as herein prescribed

would result in their destruction or substantial injury, the provisions of this section shall not apply, and the seller may re-sell the goods immediately upon their retaking. The provision of this section requiring the retention of the goods within the State during the period allowed for redemption shall not apply to the goods described in Section 8."

"Section 26. (Waiver of Statutory Protection) No act or agreement of the buyer before or at the time of the making of the contract, nor any agreement or statement by the buyer in such contract, shall constitute a valid waiver of the provisions of Sections 18, 19, 20, 21 and 25."

"Section 29. (Rules for Cases Not Provided for) In any case not provided for in this act the rules of law and equity, including the law merchant, and in particular those relating to principal and agent and to the effect of fraud, misrepresentation, duress or coercion, mistake, bankruptcy, or other invalidating cause, shall continue to apply to conditional sales."

This Act, approved April 3, 1919, is found in *volume 30, Laws of Delaware, page 505.*

The defendant justifies its refusal to accept the tender made by the plaintiff, solely by reason of the acceleration clause in the contract of conditional sale.

Counsel for the defendant in support of the demurrer, argues the purpose and necessity of an acceleration clause in a conditional sale contract and that such provisions are not unusual, but frequently found in notes and mortgages payable in installments; that the insertion of an acceleration clause is not prohibited by the Uniform Conditional Sales Act; that the redemption provision in the Uniform Conditional Sales Act was to prevent forfeiture of the amount which had been paid by the buyer prior to the repossession of the article by the seller; and that the acceleration clause is not expressly provided for or against in the act and therefore it comes within the provisions of section 29, which refers to rules for cases not provided for.

Counsel for the plaintiff contends that the acceleration clause in the contract is in effect in conflict with the provisions of section 18, which section he contends expressly gives the buyer the right to redeem the goods, and to take possession of and to continue in the performance of the contract the same as if no default had occurred, and that under the provisions of section 26, the buyer is prohibited by any agreement made before or at the time of making the contract, or by any statement in the contract to waive the provisions of section 18.

The general purpose of the framers of the Uniform Conditional Sales Act was to provide a statute which, in its provisions, would be just and fair to the buyer and to the seller, and to other persons whose rights might be affected by the sale, with the general intention to protect the title of the seller in the goods sold as security for the purchase price and to assure possession in the buyer as long as he was not in default in his promises, with the right on the part of the buyer to take title when he had fully performed his contractual obligations.

Section 16 gives the seller the right to repossess, if provided for in the contract, when the buyer is in default.

Sections 17 and 18 provide methods for the exercise of the right of repossession given to the seller in section 16.

Under the provisions of section 17, the seller must give the buyer not more than forty, nor less than twenty, days' notice of his intention to repossess the goods on a certain date. The buyer is given the right to perform the obligations in which he is in default at any time prior to the day set for the retaking. When the goods are retaken by the seller under section 17, the buyer is denied the right of redemption.

Under the provisions of section 18, the seller is required to retain the repossessed goods within the state for ten days following the retaking; and the buyer is given the right to again possess upon complying with the provisions of section 18, with respect to payment, or tender, or the fulfillment of other promises.

The purpose of the two sections, with respect to the rights of the buyer is the same, viz.: To provide a reasonable period during which he may meet the requirements of the statute with respect to default, and under section 17 to retain possession, and under section 18 to again possess the article purchased.

The general idea incorporated in section 18 evidently was that, although there should be a short delay on the part of the buyer in the performance of his promises, he should not be excessively penalized by reason of the default, when the rights of the seller might be fully and amply protected without expense on his part.

There would be no hardship on the seller, if after a short delay of only a few days the default is removed without expense to him and the buyer allowed to proceed with the contract the same as if there had been no default. The seller would continue to retain the title as security and there could be very little change in the value of the articles during the ten-day period between the time of repossession by the seller and the time allowed by the statute for the buyer to repair his default. If the buyer's security was sufficient at the time of repossession, it would also be sufficient at the expiration of the ten-day period.

On the other hand, in a great majority of cases it would be too great a burden for the buyer to overcome, if by reason of the default he was required, within ten days to pay the balance due on the purchase price, together with all expenses, etc. At the time of the purchase, it is likely he was unable to pay the full purchase price or he would have done so. The probabilities are that after default he would be unable to pay at one time the balance of the purchase price together with expenses and charges, but it is possible he might be able to raise sufficient funds to pay the arrearages, interest and charges, in fact the present case is such an instance.

And again, we do not see any reason why there should be a greater burden imposed upon the buyer, in case of default in the payment of any installments than in case of failure to perform any other promise in the contract for the breach of which the goods may be repossessed by the seller, and we do not think it was the intention of the legislature to make a distinction between the two cases.

Section 18 states in certain and unequivocal language that upon the performance or tender of performance of any other promise for the breach of which the goods were taken, upon the payment of the expenses of retaking, keeping and storage, the buyer may redeem the goods and become entitled to take possession of them and to continue in the performance of the contract as if no default had occurred. The primary rule of construction is to ascertain and give effect to the intent of the law and if the intent, when ascertained, is not consistent with the strict letter of the stat-

ute, the intention prevails. As stated in *Lewis' Sutherland on Statutory Construction* (2d *Ed.*), § 365:

"Courts will not follow the letter of a statute when it leads away from the true intent and purpose of the Legislature."

It has also been said that—

"Reason and intention will prevail over the strict letter and the letter will, if possible, be read to conform to the spirit of the Act."

It has been the endeavor of the court, up to this point to ascertain the general purpose and intention of the framers of the Uniform Conditional Sales Act and through such means to ascertain the meaning intended to be expressed by the language used in section 18.

There are, however, certain other rules of construction which will now be considered in construing this section.

■ It is an elementary rule of construction that effect must be given if possible to every word, clause and sentence of a statute and that statutes should be so construed that effect may be given to all of their provisions so that no part will be inoperative, superfluous or insignificant. *Sutherland, Statutory Construction* (2d *Ed.*), § 38.

Another rule is that it is not safe to base a construction upon a particular word or phrase, for one portion may frequently be designed to extend, qualify or limit another so that the meaning of one portion of a statute may depend upon the effect of another. 25 *R. C. L., p.* 247.

■ The particular inquiry is, not what is the abstract force of the words or what they may comprehend, but it is, in what sense they were intended to be used as they are found in the act. Each part, or section, should be constructed in connection with every other part or section and so as to produce a harmonious whole.

Examining section 18 in the light of the above rules of construction, it is our opinion that the words "the amount due under the contract" should not be considered alone, but must be considered in connection with the words "and to continue in the performance of the contract as if no default had occurred" appearing in the same sentence, and, therefore, the literal meaning of the words

in the first part of the sentence is limited or qualified by the words at the end of the same sentence and that the words "amount due under the contract" were intended to mean the amount due as installments, and it was not intended that they should be given a meaning such as would make it possible for the contract to require the payment of the balance of the purchase price at once upon a default in the payment of any installment.

Any other interpretation would make inoperative, useless and without meaning the words of the section "and to continue in the performance of the contract as if no default had occurred" when applied to a conditional sale contract containing an acceleration clause, for if the balance of the purchase price and all expenses were paid by the buyer, there would be nothing remaining to be performed by him and this would be contrary to the rules of construction above stated.

The only other case we have been able to find in which the exact question before this court has been determined is that of *Street v. Commercial Credit Co. (Ariz.)*, 281 *P*. 46, 48, 67 *A. L. R.* 1549. In that case the court said:

"On the other hand, the construction contended for by appellant (buyer) would protect the equitable rights of both parties. In equity the seller is entitled only to his purchase price and expenses. He has already agreed to accept that price on the installment plan. If the buyer is in default, and that for a day, on one payment only the seller may seize the property, and the buyer must not only make up the delinquent payment with interest in ten days, but must also pay all the expenses of retaking, keeping and storage. A failure to redeem within the statutory time allows the seller to then pursue any of his remedies on the theory that the whole purchase price is then due and payable. Surely he is amply protected so far as his equitable rights are concerned. And the buyer will be warned against unnecessary defaults by his liability for expenses, generally amounting to a penalty of from 10 to 50 per cent. of the delinquent installment. He is, however, given a chance to redeem on terms which, though onerous, are usually possible, unless his financial situation is hopeless.

"On the other hand, the construction contended for by appellees (seller) would frequently give the seller his full, original purchase price, plus an additional profit of from 10 to 60 per cent. by means of a resale, while in its practical workings it would make redemption impossible by a very large proportion of debtors who had already paid a substantial part of the purchase price and could continue the installment payments, though finding it utterly impossible to raise the full amount unpaid in one sum."

The defendant argues that the insertion of an acceleration clause is not forbidden by the Uniform Conditional Sales Act and

that such clause is not out of harmony with the purpose of the act. If we are correct in holding that section 18 provides that the buyer may redeem the goods repossessed by the seller upon the payment by the buyer of the installments due at the time of the repossession, then it must necessarily follow that any provision in the contract making the redemption of the property dependent upon the payment of the balance of the purchase price is contrary to and out of harmony with the provisions of section 18. Certainly any provision in the contract requiring the buyer to pay the balance due on the purchase price in order that he may redeem the goods must be inconsistent with and contrary to the provisions of the act giving the buyer the right to redeem upon the payment of the arrearage, etc.

It cannot be argued with merit that the acceleration clause in the contract of conditional sale is not prohibited by the act or in effect that it is a waiver of the provisions of section 18, for it is provided in section 26

"no act or agreement of the buyer before or at the time of the making of the contract, nor any agreement or statement by the buyer in such contract, shall constitute a valid waiver of the provisions of Sections 18, 19, 20, 21 and 25."

It has been said in the case of *O. S. Stapley Co. v. Rogers, et al., 25 Ariz.* 308, 216 *P.* 1072, 1074, that—

"The provision in this law forbidding the buyer to enter into any contract of waiver is a declaration by the Legislature of a public policy, and under the decisions one may not contract contrary to such policy."

With respect to the argument of the defendant that the redemption provision of the statute was to prevent a forfeiture of the amount paid by the buyer prior to repossession by the seller, it is true that under the common law any amount paid by the buyer was forfeited but some of the courts of the United States have long ago departed from the strictness of the common law in such cases and to avoid forfeiture of any amount paid have permitted redemption by the buyer upon just and equitable terms. However, the right of redemption specially provided for in the Uniform Conditional Sales Act is evidently intended, not only to avoid a forfeiture of any amount paid, but to provide the precise terms upon which the article may be redeemed by the buyer with the additional right upon his part after redemption to continue in the performance of

the contract, the same as if there had been no default and we have already stated what we understand these terms to be.

The defendant also argues that the acceleration clause is not provided for or against in the act and, therefore, it comes within the provisions of section 29 of the act, which section provides:

"Section 29. (Rules for Cases not Provided for) In any case not provided for in this act the rules of law and equity, including the law merchant, and in particular those relating to principal and agent and to the effect of fraud, misrepresentation, duress or coercion, mistake, bankruptcy, or other invalidating cause, shall continue to apply to conditional sales."

This section as clearly expressed by its language was only intended to include matters not provided for in the act and was not intended to have reference to those things for which provision had been made in the act.

While the act makes no mention of the acceleration clause, it does, however, affirmatively provide for the right of redemption and the terms thereof and any provision in a contract, abridging this statutory right must be regarded as contrary to the terms of the statute and not as a case coming within the class of cases set out in section 29 as cases not provided for in the act.

The Court are of the opinion that the acceleration clause in a contract of conditional sale is repugnant to the intent and purpose of the Conditional Sales Act and is contrary to its provisions.

For the reasons stated, the defendant's demurrer to the plaintiff's declaration is overruled.