COX, Respondent, v. GENERAL MOTORS ACCEPTANCE CORP., et al, Appellant.

(241 N. W. 609.)

(File No. 7311. Opinion filed March 22, 1932.)

*T. R. Johnson,* of Sioux Falls, for Appellant.

*Louis H. Smith,* of Sioux Falls, for Respondent.

CAMPBELL, P. J. Plaintiff bought an automobile upon conditional sale contract from the defendant Sioux Falls Motor Company in June, 1930. When this action was instituted, General Motors Acceptance Corporation was made a codefendant, but at the close of all the testimony a verdict was directed in favor of General Motors Acceptance Corporation, from which no appeal has been taken; so that phase of the case may be entirely disregarded, and hereafter in using the word defendant the reference

will be to Sioux Falls Motor Company. The purchase price of the car was $1,067.05, of which $450 was paid in cash and trade at the date of the contract, leaving a balance of $617.05 due in three equal installments, September 20, 1930, December 20, 1030, and March 20, 1931, respectively. Plaintiff failed to pay the September 20th installment, and in October, 1930 (whether upon the 4th, 7th, or 15th of that month will be hereinafter considered), defendant repossessed the car. Such repossession was not preceded by written notice of intention pursuant to section 17, Uniform Conditional Sales Act (chapter 137, Laws 1919). Plaintiff claims, and defendant denies, that within ten days after such repossession he tendered to defendant, pursuant to section 18, Uniform Conditional Sales Act, the amount then due under the contract, with interest, storage, etc., but that defendant refused to return the car to plaintiff. Under these circumstances plaintiff served and filed his complaint herein setting forth two causes of action. The first cause of action treats the refusal of defendant to return the car on plaintiff's tender as a conversion, and asks damages for such conversion in the amount of $504.91, which was the amount that plaintiff at the date of his claimed tender had paid upon the car in question, including the trade-in allowance at the time the contract was made. The second cause of action repleads the facts sufficiently, and alleges plaintiff's damage in the same amount of $504.91, and is obviously based upon the provisions of section 25 of the Uniform Conditional Sales Act providing that, if a seller after retaking fails to comply with the provisions of sections 18, 19, 20, 21 and 23 of the Uniform Act, the buyer may recover his actual damages, if any, and in no event less than one-fourth of all payments which have been made under the contract, with interest.

Defendants answer admits the sale of the car, the purchase price, and the payments made, and alleges by way of counterclaim a repossession upon default, a retention for ten days, and sale thereafter; and that the automobile at the time of the repossession was not worth more than the balance due on the contract.

The case came on for trial upon the issues so joined, and resulted in a jury verdict for plaintiff in the sum of $270, plus 7 per cent interest from October 15, 1930. From judgment entered upon such verdict and denial of its application for new trial, defendant has appealed.

Appellant predicates error on several rulings as to admissibility of evidence. We have examined these assignments with care, and it seems plain that most of the rulings were correct and still plainer that none of them were prejudicial. The individual assignments in this group do not appear to require or merit any more detailed statement or discussion.

Appellant questions the sufficiency of the evidence to support the verdict. This point involves the disputed fact questions as to the precise date the car was repossessed and as to whether or not a sufficient tender was thereafter made by respondent. The stories of the parties are utterly conflicting. All admit that the car was brought to the shop of appellant by respondent himself on either the 4th or 7th of October. All admit that the installment due September 20th was then unpaid, and that appellant had been pressing respondent for payment thereof. Respondent contends, however, that he took the car to appellant's garage entirely of his own volition and solely for the purpose of having some repair work done upon the fenders and headlights. Appellant maintains, on the other hand, that, when respondent was not able to meet the installment of September 20th, he was told that he would have to bring the car in and surrender possession thereof under the contract; that respondent said he could not make the payment, but would bring the car in; that he did bring the car in for the specific purpose of surrendering possession thereof to appellant, pursuant to the contract and because of his default. There is some doubt as to whether the car was brought to the shop of appellant on the 4th or 7th of October, but this precise point is not material. It is admitted by all that, when the car was brought in by respondent, some repair work was in fact done thereon, and that on October 15th respondent came to the shop, paid the bill for such repairs in the amount of $26.63, and made a partial payment of $54.91 on the past-due contract installment of September 20th, for which payments appellant gave him receipts. Respondent says that, having made these payments on October 15th, he started to drive the car away, and was then told by appellant that he could not take the car out until he paid everything that was due on the contract, including the delinquent balance on the September 20th installment, and also the future installments of December 20, 1930, and March 20, 1931. Respondent avers that this was the first knowledge or

notice of any sort received by him to the effect that the appellant desired or intended to exercise any right to take or hold possession of the car under the conditional sale contract. In any event, respondent did not remove the car on the 15th. This was upon a Wednesday. Respondent testifies that three days later, on Saturday, October 18th, he and his brother went to the shop of appellant with $175 in currency, and tendered the same to appellant in payment of the balance then due upon the contract, together with interest and storage charges, and demanded the car, but that appellant refused the tender, and insisted that respondent, in order to obtain the car, must pay the full amount of the contract. Appellant denies that any tender in any amount whatever was made at any time, denies that it ever demanded the full balance due on the contract, and insists that until the expiration of ten days after repossession it was always ready and willing to return the car to respondent if he paid the amount due under the contract at the time of retaking with interest, storage, etc., as provided by section 18, Uniform Conditional Sales Act.

■ The disagreement of the witnesses as to essential facts is almost complete. If respondent's story is to be believed, there was no repossession by appellant until October 15th, when appellant, for the first time, purported to hold the car under the contract. On October 18th respondent (or his brother for him and in his presence) tendered the sum of $175 and demanded the car, which demand was refused. Simple computation shows beyond reasonable doubt that the sum of $175 (if tendered as claimed) was adequate in amount to comply with the requirement of section 18, Uniform Conditional Sales Act. The balance due on the September 20th installment was only $150.78, and interest thereon could not exceed $1.72, which would leave $22.50 of the tender to cover the expense of retaking and storage. The car had not been in the shop over fourteen days at the maximum, during most of which, according to appellant's own testimony, it was either being worked on or waiting its turn until appellant could find time to work on it, and there was no expense of retaking, because all admit that respondent brought the car to the shop himself. If respondent made the tender he claims he made, appellant could not take advantage of any acceleration clause in the contract to insist upon payment of the full contract amount. Street v. Com-

mercial Credit Co., 35 Ariz. 479, 281 P. 46, 67 A. L. R. 1549; Harlee v. Fed. Finance Corp. (Del.) 152 A. 596.

■ ■ Appellant, as we have pointed out, claimed a definite repossession on October 4th or 7th, and that there was no tender of any amount within ten days thereafter, or at all. But the credibility of witnesses and the choice of whom they would believe as to disputed facts was for the jury, and it cannot be successfully maintained in this case that the evidence was insufficient to support the verdict.

■ Appellant sets up by affidavit misconduct of respondent's counsel in stating in argument to the jury that, "if plaintiff recovers in this case and gets any verdict the defendant will appeal the case to the supreme court." Counsel for respondent contends that this was responsive to certain prior argument of opposing counsel. The court promptly admonished the jury to disregard the remark, and while undoubtedly it would have been better omitted, we are unable to see that it was prejudicial. Conceding its impropriety, at least it must be admitted that subsequent events have demonstrated its merit as prophecy.

■ Appellant excepted to an instruction of the court upon measure of damages. It is apparent that the instruction was intended to be based upon the provisions of section 25 of the Uniform Conditional Sales Act. Whether the instruction was an accurate interpretation of that section we need not here determine, since we are convinced upon examination of the instruction that, if there was any error therein, such error was in appellant's favor.

Appellant excepted also to an instruction with reference to the effect of the claimed tender on October 18th, if the jury should find such tender was made. The exception of appellant to this instruction is founded primarily upon appellant's contention that repossession was on October 4th or October 7th, both of which dates were more than ten days prior to October 18th. Appellant's contention on this point overlooks the fact that, if the jury saw fit to believe respondent's story (and apparently they did), they were not only entitled, but required, to find that there was no repossession until October 15th, as a matter of fact and law, even though the car was physically in appellant's shop from and after either October 4th or 7th.

There is but one other matter that requires attention. Appellant requested the following instruction: "If you believe that any witness in this case has knowingly sworn falsely to any material matter in this case you may reject all the testimony of such witness." The learned trial judge denied such request, but of his own motion gave substantially the same instruction, except that he added thereto this clause: "Except insofar as the witness is corroborated by other credible evidence, to disregard all the testimony of such witness."

Appellant excepted to the denial of its request and to the giving of the court's instruction, particularly the qualifying clause thereon, pointing out specifically and definitely the propriety of the requested instruction as frequently approved by this court and the vice of the qualifying clause added by the trial judge, which has also been pointed out by this court.

There was palpable false swearing in this case somewhere, and either party so requesting was entitled to an instruction upon the doctrine of "Falsus in uno, falsus in omnibus." That the form of this instruction as requested was proper is very clear from the decisions of this court. The question for determination is only as to the effect of the addition of the qualifying clause which the learned trial judge insisted upon inserting over objection. This final qualifying clause seems to be a hardy perennial. We shall endeavor in some detail and with precision to restate our position regarding it.

The matter of instructing upon the doctrine of "Falsus in uno, falsus in omnibus," has been dealt with by this court to a greater or lesser extent in the following cases: State v. Sexton (1897) 10 S. D. 127, 72 N. W. 84, reversed on rehearing on other grounds, 11 S. D. 105, 75 N. W. 895; Hurlbut v. Leper (1900) 12 S. D. 321, 81 N. W. 631; State v. Raice (1909) 24 S. D. 111, 123 N. W. 708; Richardson v. Gage (1911) 28 S. D. 390, 133 N. W. 692, Ann. Cas. 1914B 534; State v. Goodnow (1919) 41 S. D. 391, 170 N. W. 661; Citizens' Bk. v. Bailey (1923) 46 S. D. 547, 195 N. W. 37; State v. Weston (1924) 47 S. D. 328, 198 N. W. 826; State v. Wilcox (1925) 48 S. D. 289, 204 N. W. 369; State v. Staley (1930) 56 S. D. 495, 229 N. W. 373 (on rehearing); State v. Hanley (1931) 58 S. D. 191, 235 N. W. 516, 518; State v. Hall (1931) 59 S. D. 98, 238 N. W. 302.

An examination of these decisions will show that in some of the cases the instruction given or requested contained the qualifying clause given in this case (or a similar qualification), while in others it did not. In many of these cases, the sole issue made, and the only point discussed in the opinion, was the propriety or necessity of any instruction at all upon the doctrine; the precise form of the instruction and the propriety or impropriety of a qualifying clause was not raised by either party or considered by the court. In every one of these cases, however, where the precise form of the instruction was specifically presented to, and considered by, the court, a qualifying clause such as was given in the instant case has been definitely and unqualifiedly disapproved. See, particularly, Citizens' Bk. v. Bailey, supra; State v. Hanley, supra, and State v. Hall, supra. In the Hanley Case, the matter was thoroughly and carefully discussed, and it was plainly pointed out that it was much better practice to give the instruction without qualification. It was clearly elucidated and precisely stated that the addition of such qualifying clause "made that confused and incorrect which before was clear and correct." In the Hall Case, it was said that the addition of the qualifying clause made the instruction "quite senseless." The qualifying clause in question represents a most infelicitous attempt to express to the jury a composite of two ideas, which the jurors already understand as well as the judge. The court is trying to say that even a chronic liar may peradventure tell the truth upon occasion; and that to disregard the testimony of a perjurer does not mean that it is needful to assume the truth of the converse of everything to which he has testified. He is trying to tell the jurors that, if the existence of material fact X is proved to their satisfaction by independent, credible proof, they need not doubt or disbelieve the existence of such fact merely because a witness whom they deem unworthy of any credit has also testified to it.

The language of the qualifying clause is not apt for the accomplishment of the purpose in mind, and the giving of any such caution is entirely unnecessary.

■ The qualification has received well-merited criticism whenever it has been presented to this court. The giving thereof has always been held to constitute error. However, we have never held the addition of this erroneous qualification to the instruction to

be sufficiently prejudicial, in the absence of other error, to warrant reversal of a case solely on that ground. We are not willing to do so now. We are convinced that such attempted qualification, erroneous and incorrect as it is, could not harmfully deceive or mislead even the most obtuse juror.

Having expounded our exact views on this question at perhaps greater length than the situation warrants, we venture to hope that this precise point may not be urged upon us so frequently in the future as it has been in the recent past.

Finding no prejudicial error in the record, the judgment and order appealed from are affirmed.

POLLEY, ROBERTS, WARREN, and RUDOLPH, JJ., concur.