GEORGE L. CLARK, Appellant, *v.* TRI-STATE DISCOUNT COMPANY, INC., and Others, Respondents.

Supreme Court, Appellate Term, Second Department, May 17, 1934.

*Lester Grossman,* for the appellant.

*Irving Schwartzberg [William A. Blank* of counsel],  for the respondents.

JOHNSTON, J.   The action is in replevin to recover possession of an automobile, or $650 damages in case possession thereof cannot be had, together with $350 damages for its detention.

On May 29, 1933, plaintiff purchased a Plymouth automobile from a dealer.   He received an allowance of $250 for a Buick car which he traded in and made a cash payment of $55, leaving a balance of $492.   On the same day plaintiff made a conditional sales contract with defendant Tri-Discount Company, Inc., which financed the sale, by which he agreed to pay the deferred balance in twelve installments of $41 each on the twenty-ninth day of each succeeding month.   The contract also provided: " If any of buyer's indebtedness shall become due and remain unpaid in whole or in part   *   *   *   the full amount unpaid hereunder   *   *   * shall become due and payable forthwith, and seller or its assigns may   *   *   *   enter any premises where such car may be found and take possession thereof."   Plaintiff paid the installment which became due on June 29, 1933, but failed to make the payment due on July 29, 1933.   He sought to justify his failure to pay this installment because he had not received a fire and theft policy of insurance covering the automobile and a certificate of sale necessary to register it.

It is admitted the automobile was repossessed by the defendant Motor Vehicle Plan, Inc., on August 5, 1933.

On August eighth and twelfth plaintiff — pursuant to section 78 of the Personal Property Law — tendered the unpaid installment, plus interest and expenses of retaking, keeping and storage, and demanded the redelivery of the automobile.   Defendants refused to accept the tender and failed to return the automobile.

The cause of action alleges the illegality of the taking and also charges the omission of a statutory duty in failing to return the

automobile after tender of the delinquent installment plus interest and expenses.

The learned court below dismissed the complaint at the close of plaintiff's case, holding defendants were not obligated under the contract to deliver the insurance policy or certificate of sale, and that the tender was ineffectual to entitle plaintiff to redeem the automobile.

Plaintiff, while admitting there is no express provision of the contract which obligates defendants, or either of them, to deliver the insurance policy or certificate of sale, contends a covenant to do so is implied and should be read into the agreement.

It is true that although a party does not in express terms undertake to do a particular act, if from the text of the agreement or the surrounding circumstances it is manifest that the parties so intended, a covenant to do it will be implied. (*Booth* v. *Cleveland Mill Co.*, 74 N. Y. 15, 21; *Patterson* v. *Guardian Trust Co.*, 144 App. Div. 863.) This contract, however, appears to have been drawn with meticulous care, technical accuracy and obvious attention to details, and we cannot say a covenant to deliver the instruments in question was implied. Nor can we say, in the absence of proof, that the parties contracted with reference to a custom in the automobile trade obligating a vendor to deliver the instruments. Therefore, the court did not err in holding the retaking of the automobile was legal.

Whether defendants were justified in retaining possession of the automobile after plaintiff tendered the installment plus interest and expenses of taking, keeping and storage, presents a more interesting question. It involves the interpretation of section 78 of the Personal Property Law (as added by Laws of 1922, chap. 642), known as the Uniform Conditional Sales Act, which reads in part as follows:

" § 78. Redemption. If the seller does not give the notice of intention to retake described in section seventy-seven, he shall retain the goods for ten days after the retaking within the state in which they were located when retaken, during which period the buyer, upon payment or tender of the amount due under the contract at the time of retaking and interest, or upon performance or tender of performance of such other condition as may be named in the contract as precedent to the passage of the property in the goods, or upon performance or tender of performance of any other promise for the breach of which the goods were retaken, and upon payment of the expenses of retaking, keeping and storage, may redeem the goods and become entitled to take possession of them and to continue in the performance of the contract as if no default

had occurred. Upon written demand delivered personally or by registered mail by the buyer, the seller shall furnish to the buyer a written statement of the sum due under the contract and the expense of retaking, keeping and storage. For failure to furnish such statement within a reasonable time after demand, the seller shall forfeit to the buyer ten dollars and also be liable to him for all damages suffered because of such failure."

It will be helpful, in interpreting this statute, to point out the occasion and necessity for it and the object sought to be obtained. Prior to its enactment the rights of the parties to a conditional sales contract were governed by article 4, sections 60–67 of the Personal Property Law of 1909, formerly Lien Law of 1897 (Laws of 1897, chap. 418), article 9, as amended. Section 65 provided in part that a vendor under a conditional sales contract who retook the property was required to retain it for a period of thirty days from the time of the retaking, and during such period the vendor or his successor in interest might " comply with the terms of such contract " and thereupon receive the property. The legislative purpose was to mitigate " the possible harshness of such a contract by preserving some right to a vendee," and to assure to the vendee a redemption period of thirty days following the retaking of the property. (*Crowe* v. *Liquid Carbonic Co.*, 208 N. Y. 396, 403.) Experience showed that statute, though salutary, did not sufficiently protect the buyer. While it afforded him an opportunity to redeem the property, he could do so only by complying " with the terms of such contract," which invariably meant by paying the balance of the purchase price. This, save in rare instances, was an empty right. If he were unable to pay part of his indebtedness it was unlikely he could pay it all, even if granted thirty days' grace. It is true section 65 also provided that the vendor or his successor in interest must sell the property within thirty days after the expiration of the first period of thirty days, otherwise the vendee or his successor in interest might recover the amount paid under the contract. Obviously, the prospect of the vendee recovering the amount paid was very remote.

It was to assure a more equitable protection to conditional vendees — who in the main are unable to protect themselves — that section 78 of the Uniform Conditional Sales Act (Pers. Prop. Law, § 78) was adopted. It is essentially a remedial statute. It was designed to avoid forfeiture of the amount paid by the buyer and to prevent unjust enrichment of the seller by permitting the former to redeem upon terms that would be just to both.

The question is, does a buyer in default under a conditional sales contract containing an acceleration clause comply with the

statute by making a timely payment or tender of the delinquent installment plus interest and the enumerated expenses, or must he pay or tender the entire balance of the purchase price?

It will be observed the statute provides that the buyer " upon payment or tender of the amount due under the contract * * * may redeem the goods and become entitled to take possession of them and to continue in the performance of the contract as if no default had occurred." The words " amount due under the contract " refer to the installment in default and not to the balance of the purchase price. To hold otherwise would make useless and meaningless the other words of the same sentence, " and to continue in the performance of the contract as if no default had occurred." If it were the Legislature's intention, where the contract contains an acceleration clause, to require a buyer in default who seeks to redeem the property to pay or tender the entire balance of the purchase price, then his right under the statute " to continue in the performance of the contract as if no default had occurred " would be rendered nugatory. If he paid the entire balance due, the contract would be completely performed and his obligation under it fully discharged.

Although the parties agree, as they did in the instant case, " if any of buyer's indebtedness shall become due and remain unpaid in whole or in part * * * the full amount unpaid * * * shall become due and payable forthwith," they must be deemed to have contracted with reference to the statute. The statute was, in legal effect, a part of the contract. (*Strauss* v. *Union Central Life Ins. Co.*, 170 N. Y. 349, 356.)

Moreover, the seller may not circumvent the statute, nor the buyer waive the protection it affords him. Section 80-f of the Uniform Conditional Sales Act (Pers. Prop. Law, § 80-f), so far as material, provides: " Waiver of statutory protection. No act or agreement of the buyer before or at the time of the making of the contract, nor any agreement or statement by the buyer in such contract, shall constitute a valid waiver of the provisions of sections seventy-eight, * * *."

It has been held, even in the absence of such a statute, that an express waiver in a conditional sales contract of the provisions of a statute is ineffectual because inconsistent with the public policy which the legislative act manifested. (*Crowe* v. *Liquid Carbonic Co., supra; Roach* v. *Curtis*, 115 App. Div. 765; affd., 191 N. Y. 387.)

While neither counsel nor we have been able to find a case in this State construing section 78, the courts in three other jurisdictions have considered the same question involving identical

statutes, and reached the conclusion arrived at here. (*Street* v. *Commercial Credit Co.*, 35 Ariz. 479; *Harlee* v. *Federal Finance Corp.*, [Del.] 152 Atl. 596; *Cox* v. *General Motors Acceptance Corp.*, 59 S. D. 588; 241 N. W. 609.)

Defendants' contention, that the action will not lie because appellant was not vested with legal title to the automobile at the time of the retaking, is untenable. An action of replevin is essentially possessory in its nature. (*Sinnott* v. *Feiock*, 165 N. Y. 444.) The issue in such an action is the right to the possession of the property. (*Roach* v. *Curtis*, *supra*.) It is not essential that the plaintiff establish ownership.

For the reasons stated it was error to nonsuit the plaintiff.

As there must be a new trial, it may be well to point out that if it be found, as defendants claim, that the Tri-State Discount Company, Inc., assigned the contract to the Commercial Banking Corporation, which in turn assigned it to the Motor Vehicle Plan, Inc., and the assignments are not a cover or a sham, the latter alone would be liable. (*Manhattan T. S. Corp.* v. *Checker C. M. Corp.*, 253 N. Y. 455, 461.)

Judgment reversed and new trial granted, with thirty dollars costs to appellant to abide the event.

CROSPEY and LEWIS, JJ., concur.