[Civil No. 2792. Filed October 7, 1929.]

[281 Pac. 46.]

F. M. STREET, Appellant, v. COMMERCIAL CREDIT COMPANY, a Corporation, and R. D. ROPER, Doing Business at Phoenix, Arizona, Under the Name and Style of R. D. ROPER MOTOR COMPANY, Appellees.

See Statutes, 36 Cyc., p. 1110, n. 56, p. 1128, n. 58, p. 1129, n. 59.

Mr. Albert D. Leyhe, for Appellant.

Mr. Fred Blair Townsend and Mr. Earl F. Drake, for Appellees.

LOCKWOOD, C. J.—This is an action by F. M. Street, hereinafter called appellant, against Commercial Credit Company, a corporation, and R. D. Roper, doing business under the name of R. D. Roper Motor Company, hereinafter called appellees, for damages for the alleged conversion of a certain automobile. The case was tried to a jury, which, under the peremptory instructions of the court, returned a verdict for appellees, and, from the judgment rendered thereon and the order denying the motion for a new trial, this appeal is taken.

There is no reporter's transcript of the evidence, but both appellant and appellees presented suggested statements of fact to the trial judge, who, after amending them in accordance with his recollection of the evidence and proceedings, signed both, stating in his certificate that this was the only way he could properly present the facts, and that the two were to be taken together. From these two statements we have taken the following facts as material to a proper determination of the case:

Appellant in January, 1927, purchased from Roper a Chrysler automobile for the sum of $2,064.06, payable $900 cash, and the balance in monthly installments of $64.67, payable on the eighth day of each month, a conditional sales contract being executed in the usual form, assigned by Roper to the Commercial Credit Company, and recorded in Maricopa county only. We shall refer to its terms as seems necessary. The payments for February, March and April were duly made. Early in May appellant left her home in Maricopa county for Pima county, taking the automobile with her, and intending to be gone a few days only, but for various reasons her stay was prolonged, and she did not return to Maricopa county permanently until early in July, though she did make several trips back and forth between the two counties in the automobile, but otherwise keeping it in Pima county. Appellees were never notified of the removal, nor did they consent thereto. On May 20th one Newton, an agent of appellant, paid the installment due May 8th, which was accepted by the company and applied on the contract. On July 5th, appellant having returned permanently to her home in Maricopa county, the company repossessed itself of the automobile peaceably but against the will of appellant, claiming that the contract had been violated both by removal from the county of registry and by failure to pay the June installment, and declared it forfeited.

On the same day appellant tendered to the company the delinquent installment with interest and all expenses of taking, keeping and storage, and made demand for the redelivery of the automobile. The company refused to accept the tender, claiming that by virtue of the contract the entire balance of the purchase price had become due for failure to pay the June installment, and that no less amount would be accepted. The appellant the next day tendered both the June and July installments, and added an offer

to furnish a bond for the payment of the entire balance due, but the offer was refused for the same reasons. Thereafter the company gave notice that it intended to sell the automobile under the provisions of the Uniform Conditional Sales Act, chapter 40, Session Laws of 1919, which we shall hereafter call the act, and on July 22d the sale was made to Roper. Thereafter this suit for damages was brought.

There are several assignments of error, raising a number of interesting points, but we need consider but one question of law on this appeal. Was the tender admittedly made by appellant sufficient to set aside the forfeiture and reinstate the contract? If it was, necessarily the trial court erred in instructing the jury to return a verdict for appellees.

The question is one of some moment, involving as it does an interpretation of one of the principal provisions of the act. Counsel for both appellant and appellees state frankly that they have been unable to find an adjudicated case interpreting the particular part of the section involved herein, and a somewhat extensive search on our part has failed to disclose any. The section of the act which we consider reads in part as follows:

"Section 18 (Redemption). If the seller does not give the notice of intention to retake described in Section 17, he shall retain the goods for ten days after the retaking within the state in which they were located when retaken, during which period the buyer, upon payment or tender of the *amount due under the contract at the time of retaking* and interest, or upon performance or tender of performance of such other condition as may be named in the contract as precedent to the passage of the property in the goods, or upon performance or tender of performance of any other promise for the breach of which the goods were retaken, and upon payment of the expenses of retaking, keeping and storage, may redeem the goods and become entitled to take possession of them and

*to continue in the performance of the contract as if* no default had occurred. . . . '' (Italics ours.)

The only installment delinquent under the terms of the contract at the time of the retaking of the car was the June installment of $64.67, and it is admitted appellant made a proper tender of not only this but the July and August payments as well, together with all expenses and interest as required by the statute, the only objection made by appellees being to the amount and not the manner of tender.

Appellees, however, rely on the acceleration provision of clause 6 of the conditional sales contract, which reads, so far as material, as follows:

''6. If the purchaser defaults on any payment or fails to comply with any of the terms or conditions hereof . . . *the full amount then unpaid hereunder shall become immediately due and payable.* . . . ''

It is argued that the ''amount due under the contract at the time of retaking,'' in view of the acceleration clause of the contract above, was the entire balance of the purchase price. Is this contention well founded?

Section 26 of the act provides:

''No act or agreement of the buyer before or at the time of the making of the contract, nor any agreement or statement by the buyer in such contract, shall constitute a valid waiver of the provisions of Sections 18, 19, 20, 21 and 25.''

We have said in *O. S. Stapley Co.* v. *Rogers,* 25 Ariz. 308, 216 Pac. 1072, 1074, that ''the provision in this law forbidding the buyer to enter into any contract of waiver is a declaration by the legislature of a public policy, and under the decisions one may not contract contrary to such policy.'' The question then is: Do the words in the statute, ''amount due under the contract at the time of retaking,'' refer

to the amount of delinquent installments, or do they refer to the entire balance of the purchase price?

It is wholly a matter of statutory construction, and the canons particularly applicable thereto are three in number: First, the statute must be construed as a whole, effect being given, if possible, to all its provisions. *Hunt* v. *Callaghan,* 33 Ariz. 235, 257 Pac. 648; 36 Cyc. 1128. Second, where one part of a statute is capable of two constructions, and the language of another part is consistent with one construction and not with the other, the first construction should be adopted. *Alexander* v. *Worthington,* 5 Md. 471; *Dennis* v. *Moses,* 18 Wash. 537, 40 L. R. A. 302, 52 Pac. 333. Third, if the language is ambiguous, the court should consider the purpose of the statute and the evil it is intended to remedy. *Minneapolis Threshing Co.* v. *Haug,* 136 Wis. 350, 117 N. W. 811; *Dekelt* v. *People,* 44 Colo. 525, 99 Pac. 330.

The two important phrases which it is necessary to reconcile in section 18, *supra,* are "upon payment or tender of the amount due under the contract at the time of retaking," and "may redeem the goods and become entitled to take possession of them and to continue in the performance of the contract as if no default had occurred." If we construe the first phrase as meaning the entire amount required to complete the payments and to pass title, then it would seem the last phrase, "continue in the performance of the contract as if no default had occurred," has no meaning or effect, for payment of the full price completes the contract, and there is nothing further for the buyer to perform. If, on the other hand, we consider the first phrase as meaning the installments then due in the absence of an acceleration clause, the last phrase is given full force and effect, for the buyer on redemption has a "further performance of the contract" incumbent on him, and he is in the precise situation "as if no default had occurred." The

first and second canons above given would seem to bear out appellant's construction of the section.

But, assuming that the matter is still ambiguous, let us apply the third canon. Before the passage of the act, the usual conditional sales contract in its provisions closely resembled the famous agreement between Shylock and Antonio. At the slightest default, notwithstanding the buyer might have paid ninety per cent of the purchase price, the seller might resume possession of the property and keep both it and the payments already made, no matter what the circumstances of the default, unless it were caused by the wrongful act of the seller, and to any plea of injustice or usury the usual reply was, "It is not so nominated in the bond." *McArthur Brothers Mercantile Co.* v. *Hagihara,* 22 Ariz. 100, 13 A. L. R. 1038, 194 Pac. 336. There is no doubt that sections 18 and 26 of the act were enacted for the express purpose of giving to the buyer some equity of redemption and preventing unjust, though technically legal, extortion by the seller. *O. S. Stapley Co.* v. *Rogers, supra.* A proviso that the buyer could redeem only on payment of the full purchase price remaining would generally be ineffectual to give any real relief, for the principal reason that conditional sales on the installment plan are made is that the buyer is unable to make full payment at once.

On the other hand, the construction contended for by appellant would protect the equitable rights of both parties. In equity the seller is entitled only to his purchase price and expenses. He has already agreed to accept that price on the installment plan. If the buyer is in default, and that for a day, on one payment only, the seller may seize the property, and the buyer must not only make up the delinquent payment with interest in ten days, but must also pay all the expenses of retaking, keeping, and storage. A

failure to redeem within the statutory time allows the seller to then pursue any of his remedies on the theory that the whole purchase price is then due and payable. Surely he is amply protected so far as his equitable rights are concerned! And the buyer will be warned against unnecessary defaults by his liability for expenses, generally amounting to a penalty of from ten to fifty per cent of the delinquent installment. He is, however, given a chance to redeem on terms which, though onerous, are usually possible, unless his financial situation is hopeless.

On the other hand, the construction contended for by appellees would frequently give the seller his full, original purchase price, plus an additional profit of from ten to sixty per cent by means of a resale, while in its practical workings it would make redemption impossible by a very large proportion of debtors who had already paid a substantial part of the purchase price and could continue the installment payments, though finding it utterly impossible to raise the full amount unpaid in one sum.

As we have said, the purpose of the law undoubtedly is to protect the buyer, the seller generally being able to fully take care of any rights he may have, even in the absence of any statute on the subject, through the various clauses of the contract of sale, almost invariably prepared at the instance of the seller by counsel skilled in the law and seldom explained to, or understood by, the purchaser when he signs it.

This being the object of the law, and the interpretation contended for by appellant, being in consonance with the canons of construction above set forth, and fully protecting the equitable rights of both parties without doing an injustice to either, while the construction urged by appellees can only be adopted by disregarding the plain language of part of section

18, *supra,* and working a decided injustice to one of the parties, we hold that the words, "amount due under the contract at the time of retaking," as used in said section 18, refer to the amount due thereunder in the absence of an acceleration clause. Such being the case, the trial court erred in withdrawing the case from the jury.

The removal of the automobile from the jurisdiction need not be considered for two reasons: First, the evidence shows it was returned to Maricopa county from time to time during the alleged period of removal, and each return would again start the thirty-day period allowed by law; and, second, the voluntary return, together with the tender required under section 18, would reinstate the contract even had any one absence exceeded thirty days.

The judgment is reversed and the case remanded for a new trial in accordance with the principles set forth above.

McALISTER and ROSS, JJ., concur.