632 P.2d 1002

**Johnnie R. ROGERS, Plaintiff-Appellant,**

**v.**

**ASSOCIATES COMMERCIAL CORPORATION,**
**Defendant-Appellee.**

**No. 1 CA–CIV 5030.**

Court of Appeals of Arizona,
Division 1,
Department B.

Aug. 18, 1981.

Gary L. Thomas, Phoenix, for plaintiff-appellant.

Lewis & Roca by Paul G. Ulrich and Richard N. Goldsmith, Phoenix, for defendant-appellee.

OPINION

HAIRE, Presiding Judge.

On this appeal, appellant urges that appellee wrongfully repossessed his truck-tractor and refrigerated trailer. His primary contention is that appellee had no right to take possession, despite default of the subject installment contracts, until appellee had accelerated the balances due under the contracts.

Procedurally, appellant filed a complaint seeking damages arising from appellee's alleged wrongful repossessing of the tractor and trailer. Appellee filed a motion to dismiss the complaint for failure to state a claim, accompanied by affidavits. Treating the motion as a motion for summary judgment, the trial court eventually entered judgment in appellee's favor, dismissing all claims urged by appellant against appellee.

Appellant urges several issues. Before setting forth the facts pertinent to their resolution, however, we will discuss appellant's contention that as a matter of law appellee was required to exercise its option to accelerate the balance due under its contracts [1] before repossessing the collateral.

A.R.S. § 44–3149 (U.C.C. § 9–503),[2] insofar as pertinent here, provides that "unless otherwise agreed a secured party has on default the right to take possession of the collateral." Thus the only prerequisite set forth in the statute is that the repossession occur "on default" by the debtor. The statute does not require as a prerequisite to repossession that the secured party have previously exercised any acceleration option which it might have. No authorities have been cited by appellant which would support such an interpretation and in our opinion the statute clearly does not impose such a requirement. As recognized in *Ford Motor Credit Co. v. Hunt*, 241 Ga. 342, 245 S.E.2d 295 (1978), the creditor's right to repossess under the Uniform Commercial Code exists independently and separately from the creditor's right to accelerate the indebtedness. Therefore, notice of acceleration is not required prior to repossession absent a provision in the agreement of the parties to the contrary.

This leads us next to appellant's contention that even though the statute may not have imposed such a requirement, the par-

---

1. Two separate contracts are involved, one relating to a truck-tractor, and the other relating to a refrigerated trailer. Except as to the amounts involved and time of payment, the terms of the contracts are identical.

2. The full text of A.R.S. § 44–3149 is as follows:
   "§ 44–3149. Secured party's right to take possession after default
   "Unless otherwise agreed a secured party has on default the right to take possession of the collateral. In taking possession a secured party may proceed without judicial process if this can be done without breach of the peace or may proceed by action. If the security agreement so provides the secured party may require the debtor to assemble the collateral and make it available to the secured party at a place to be designated by the secured party which is reasonably convenient to both parties. Without removal a secured party may render equipment unusable, and may dispose of collateral on the debtor's premises under § 44–3150."

ties have "otherwise agreed" in the contracts here involved. The pertinent contractual provision is:

> "Time is of the essence hereof and if Buyer fails to observe any provisions of this Security Agreement or if there is a default in payments because of the Buyer's failure to pay when due any installment or part thereof, the Seller may declare the unpaid balance hereunder immediately due and payable *and* may at its option, and in addition to and without prejudice to any other remedy, take possession of the property wherever it may be located. Seller may sell the property at public or private sale at which sale Seller may become the purchaser. Each party hereunder shall have the rights and privileges with respect to repossession, resale and disposition of proceeds thereof as are accorded by the Uniform Commercial Code of the State of Arizona." (Emphasis added).

Appellant's argument focuses on the use of the word "and" between appellee's right to accelerate the indebtedness in the event of default and appellee's option to take possession of the collateral in the event of default. Appellant urges, "[T]he word 'and' does not mean 'or' such that repossession is an option independent of acceleration. Repossession follows acceleration."

We agree that the use of the word "and" certainly does not mean "or"[3] in the sense of permitting the choice of only one among several available alternatives. However, this does not lead to the result urged by appellant. We cannot agree with appellant's implied argument that, as used here, the word "and" requires a sequential utilization of rights by appellee, i. e., that the rights and remedies given to appellee must be exercised in the order set forth in the contractual provision or not at all. Rather, when read in context, it is clear

that the intent of the contractual provision was to set forth various non-exclusive options available to the seller, jointly or severally, upon default by the buyer. If these options had been set forth in separate sentences, their exercise would have been available to the seller at his choice. *See Anderson v. Mobile Discount Corp.*, 122 Ariz. 411, 595 P.2d 203 (App.1979). The mere fact that the word "and" is used to join these options within one sentence so as to avoid the necessity of two sentences, does not operate to make the use of one dependent upon the prior or contemporaneous use of the other.[4] The result we reach is in accord with that reached in *Ford Motor Credit Co. v. Hunt, supra. See also Fulton National Bank v. Horn*, 239 Ga. 648, 238 S.E.2d 358 (1977). In construing a substantially similar contractual provision in its use of the word "and", the Georgia Supreme Court, notwithstanding a suggestion of its Court of Appeals to the contrary, concluded that the use of the word "and" in the provision did not make the creditor's right to repossess dependent upon the prior exercise of its independent option to accelerate.

For the reasons stated above, we hold that appellee's repossession was not rendered invalid because of its failure to exercise its option to accelerate the unpaid balance of the indebtedness prior to repossession.

Additional issues raised by appellant concern whether he was improperly denied his right to redeem the property after repossession. Since this is an appeal from a summary judgment, we set forth the facts pertinent to these issues in a light most favorable to appellant. *Boyle v. City of Phoenix*, 115 Ariz. 106, 563 P.2d 905 (1977); *Anderson v. Mobile Discount Corp., supra.* The facts involve the purchase by appellant, on separate contracts, of a large, commercial

---

3. See, however, 3 Words and Phrases 577–612 (1953) for cases in which "and" has been construed as "or".

4. Although the sense in which the word "and" might be used is extremely varied, *see* numerous case authorities collected in 3 Words and Phrases 569–631 (1953), generally its exact

meaning depends upon the overall context in which it is used. However, Webster recognizes a primary use as "a function word ... used to join sentence elements of the same grammatical rank or function." Webster's New Collegiate Dictionary 43 (1976).

truck-tractor and a refrigerated trailer. The facts and issues relating to each will generally be discussed separately, although to some extent they are interrelated.

## THE TRUCK–TRACTOR SECURITY AGREEMENT

The security agreement relating to the truck-tractor was entered into in October of 1978. Appellant was to pay monthly installments, commencing on November 14th, to the office of appellee in Anaheim, California. Appellant immediately defaulted on the contract, failing to make the first and second monthly payments, due on November 14th and December 14th respectively. The truck-tractor was initially repossessed by appellee on December 15, 1978. On or about December 19, 1978, appellant was allowed to redeem the truck-tractor by paying the past-due installments, based upon an understanding that all future payments would be made on the date due. Appellant states that he was told that in the event of a late payment, repossession would not occur so long as appellee's agent was given advance notice that the payment would be late.

■ The next payment was due on January 14, 1979. Appellant was late in making that payment, but apparently attempted to contact appellee's agent prior to payment to indicate that it would be late. The February 14th payment was not paid when it came due and appellant did not give any notice to appellee that the payment would be late.[5] Therefore, on March 5, 1979, the truck-tractor was repossessed by appellee's agent in Phoenix, Arizona.[6] In the meantime, appellant had mailed a payment on the truck-tractor to appellee's Anaheim office. This payment was received during the afternoon of the day of repossession, March 5, 1979. The check was in an amount sufficient to have paid the regular monthly installment plus late charges and insurance.[7]

For the purpose of this appeal, appellee has admitted that it did not exercise its option to declare an acceleration of the amounts due on the contracts until March 15, 1979, ten days after repossession, when it sent to appellant its notices of intent to sell the repossessed vehicles. Although the initial deadline set for redemption was March 30, 1979, this time was later extended to April 13, 1979, and then to May 7, 1979, in order that appellant might obtain the funds or refinancing necessary to redeem the vehicles.

Against this background we consider the remaining issues raised on appeal. These concern whether appellee violated appellant's right to redeem the collateral after it had been repossessed. Apart from the contention previously rejected in this opinion that the repossession was wrongful because appellee did not accelerate the indebtedness before repossession, appellant has not otherwise argued that the repossession itself was wrongful. He also concedes that he was in default on both contracts at the time of repossession.

5. Appellant contends that an issue of fact exists as to whether appellant advised appellee that the February 14th payment would be late. Appellant's affidavit does not support this contention, since its allegations in that regard are limited to a telephone call made by appellant on January 14th, specifically relating to the "payments for January."

6. Since the security agreement on the refrigerated trailer was also in default, the trailer was also repossessed at that time. Full factual details relating to the default on the refrigerated trailer security agreement will be discussed later in this opinion.

7. Appellee has urged on appeal that the record in the trial court does not disclose that the check for the February 14th payment on the truck included an amount for late charges. However, this contention was not urged by appellee in the trial court. The notation on the face of the check was "Truck and insurance payment for February." Since the check was dated on a date which would have required that the "truck payment" include a 5% late charge, in the absence of an express affidavit or facts in the record from which a contrary computation might be made, we must draw all inferences in favor of appellant, the party against whom summary judgment was granted. *Boyle v. City of Phoenix*, (cited above in text); *Anderson v. Mobile Discount Corp.*, (cited above in text).

A.R.S. § 44–3152 (U.C.C. § 9–506) provides:

"At any time before the secured party has disposed of collateral or entered into a contract for its disposition under § 44–3150 or before the obligation has been discharged under subsection B of § 44–3151 the debtor or any other secured party may unless otherwise agreed in writing after default redeem the collateral by tendering fulfillment of all obligations secured by the collateral as well as the expenses reasonably incurred by the secured party in retaking, holding and preparing the collateral for disposition, in arranging for the sale, and to the extent provided in the agreement and not prohibited by law, his reasonable attorneys' fees and legal expenses."

█ Insofar as concerns the truck-tractor indebtedness, the only tender received by appellee was the March 5th payment which we have discussed above. It did not purport to include an amount for the expense items specifically set forth in A.R.S. § 44–3152 as being essential to a legally binding tender. Therefore, it was an insufficient tender under the statute.

We have indicated that appellee did not declare an acceleration of the indebtedness until March 15, 1979. This declaration was received by appellant on March 17, 1979. Appellant does not assert that any attempt to redeem made by him prior to March 17th was refused because of his failure to tender the accelerated balance of the indebtedness. He does, however, attack the validity of appellee's March 15th declaration of acceleration, urging that a requirement that the accelerated balance be paid prior to redemption is contrary to the "tender" provisions of A.R.S. § 44–3152. He cites *Street v. Commercial Credit Co.*, 35 Ariz. 479, 281 P. 46 (1929), as authority for this contention. In the *Street* decision the Arizona Supreme Court held that a tender of the delinquent installments of a motor vehicle purchase contract plus the expenses of repossession was sufficient to require re-delivery of the vehicle and reinstatement of the contract, notwithstanding the fact that the creditor has previously accelerated the indebtedness pursuant to an express provision of the conditional sales contract. That opinion, however, involved Arizona's Uniform Conditional Sales Act § 18, Ch. 40, 1919 Ariz. Sess. Laws, which the court construed as absolutely prohibiting acceleration as a condition of redemption or re-delivery after repossession.

The Uniform Conditional Sales Act has been repealed in Arizona, and the present law clearly does not contain such a prohibition of acceleration. Under A.R.S. § 44–3152 the debtor's right of redemption is conditioned upon a tender of "all obligations secured by the collateral". The official comments to the identical section of the Uniform Commercial Code, § 9–506, make it clear that this language was intended to include the accelerated balance of an indebtedness when acceleration has occurred in accordance with an agreement of the parties prior to the tender. *See generally*, 2 Gilmore, Security Interests in Personal Property 1198–99 (1965).

█ We therefore hold that when acceleration occurs or is declared in accordance with the terms of the security agreement prior to a tender by the debtor of the amounts in default, the accelerated balance is part of the obligation secured within the meaning of the redemption provisions of A.R.S. § 44–3152.

█ Appellant also argues, based upon "equitable principles" separate and apart from the provisions of the Uniform Commercial Code, that appellee has waived its right to accelerate the indebtedness because it allegedly received and accepted a tender by appellant of the delinquent installments prior to acceleration. *See generally, Browne v. Nowlin*, 117 Ariz. 73, 570 P.2d 1246 (1977). The problem with this contention is that it finds no factual support in the record. Under the contractual provision involved here, appellee's declaration of acceleration became effective when it was communicated or manifested by some affirmative action sufficient to constitute notice to appellant of the acceleration. Since appellee's declaration did not occur until March

15, 1979, by that time the March 14th installment on the truck-tractor was in default, and appellant does not contend that he made any tender in an effort to cure that default prior to the time the acceleration was accomplished. Insofar as concerns the check for the February 14th payment which was received on March 5th, the mere receipt and stamping of the check by appellee without a subsequent deposit thereof does not constitute evidence that it was accepted as payment. Acceptance under such circumstances comprehends both receipt and evidence sufficient to support a finding of mental assent to treat the check as payment. Although not directly in point, *Congress Industries, Inc. v. Federal Life Insurance Co.*, 114 Ariz. 361, 560 P.2d 1268 (App.1977), is illustrative of this principle. Here, there is no evidence which would support a finding that appellee intended to accept the check received on March 5th as payment of the delinquent February 14th payment.

Since we have disposed of all issues raised by appellant concerning the repossession of the truck-tractor, we consider now the facts and issues as they relate to the repossession of the refrigerated trailer.

### THE TRAILER REPOSSESSION

The security agreement relating to the refrigerated trailer was entered into on January 5, 1979. The first monthly installment was due on February 18, 1979. Appellant defaulted on this first installment. As previously noted, appellee repossessed the trailer in Phoenix on March 5th. On March 7th, two days after the repossession, appellant delivered a check for the trailer payment [8] to an office of Associates Financial Services in Phoenix. The check was delivered merely with instructions that it go to Anaheim, California. The Phoenix representative of Associates Financial Services therefore sent it to the Anaheim office of Associates Financial Services. Associates Financial Services is a completely separate corporate entity from appellee, providing consumer, not commercial, financing. The Anaheim office of Associates Financial Services had no account with appellant, and therefore deposited the check in a suspense account, pending further investigation. Eventually, the Anaheim office of Associates Financial Services contacted appellee and learned that appellee had an account with appellant. Based upon the record presented in the trial court, the only inference which can be drawn is that the March 7th check did not come to the attention of appellee's agent until after the filing of this lawsuit,[9] which was well after the appellee accelerated the balance due on the trailer contract on March 15th. Appellee then immediately made arrangements for the issuance of its check to reimburse appellant for the full amount of the March 7th check. Applying the law as previously discussed in this opinion, it is obvious that there was no wrongful repossession of the trailer. Here, appellant was clearly in default at the time of repossession. His payment of March 7th, tendered to cure that default, did not include late charges,[10] and thus, was insufficient to constitute a binding tender, even without considering the failure to include an amount for the expenses of repossession. Therefore appellee did not wrongfully deprive appellant of his redemption rights relating to the trailer after repossession. Further, there can be no contention that appellee "accepted" the March 7th payment

---

8. The amount of the check did not include late charges, or any amount for the expenses of repossession as required by A.R.S. § 44–3152.

9. The complaint in this action was filed on March 21, 1979.

10. The security agreement provided that the buyer would be in default upon the buyer's "failure to pay when due any installment" and further contained a promise by buyer to pay consecutive monthly installments commencing on February 18, 1979. There was a further requirement that the buyer pay a delinquency and collection charge of 5% "on each installment in default more than 10 days". In view of these provisions, we reject appellant's contention that the date of default is somehow affected by the contract's requirement of the payment of a late charge. The default occurs when the installment is not paid on the due date. *See Wade v. Ford Motor Credit Co.*, 455 F.Supp. 147 (E.D.Mo.1978).

thereby waiving its right to accelerate the balance of the indebtedness on that contract. Based on the record established in the trial court, the March 7th trailer payment did not even come to appellee's attention until well after acceleration had been accomplished.

Since appellant has raised no issue on appeal which would justify a finding that appellee wrongfully repossessed the truck-tractor and trailer, or wrongfully denied appellant his right to redeem the same, the judgment entered in the trial court is affirmed.

JACOBSON and O'CONNOR, JJ., concur.