682 P.2d 422

**ONE HUNDRED EIGHTEEN MEMBERS OF BLUE SKY MOBILE HOME OWNERS ASSOCIATION, a non-profit association, Plaintiffs-Appellants,**

v.

**James M. MURDOCK and Jane Doe Murdock, husband and wife; James M. Murdock, individually and d/b/a Professional Investment Planning for Glendale Park Associates; Phillip Homer and Jane Doe Homer, husband and wife, Defendants-Appellees.**

No. 1 CA–CIV 6699.

Court of Appeals of Arizona, Division 1, Department D.

Jan. 12, 1984.

Reconsideration Denied Feb. 23, 1984.

Review Denied May 30, 1984.

Creasy & Skivington by Frederick C. Creasy, Jr., Scottsdale, for plaintiffs-appellants.

Derrick & Jurkowitz by Clark L. Derrick, Phoenix, for defendants-appellees.

OPINION

HAIRE, Judge.

The issue on this appeal is whether the Arizona Mobile Home Parks Residential Landlord and Tenant Act, A.R.S. §§ 33–1401 through 33–1491, requires a landlord of a mobile home park to negotiate with the park's tenants concerning the amount of a proposed increase in rent. The trial judge held that the Act does not require such negotiation, and we affirm his decision.

The appellants (hereinafter "tenants") are members of Blue Sky Mobile Home Owners Association and are tenants in Blue Sky Mobile Home Park. The appellees are the owners (hereinafter "landlord") of the mobile home park. The tenants commenced this action in March 1982, by filing a complaint seeking injunctive relief and damages on essentially two theories. First, the tenants alleged that the landlord's notice of a proposed rent increase was retaliatory and intended as a penalty against the tenants because they had organized as a tenants' organization and had requested that the landlord provide a written rental agreement in compliance with the mobile park tenancy act.[1]

---

1. A.R.S. § 33–1413(A) provides in part:

"If a tenant requests a written rental agreement, the landlord shall not penalize the tenant in any manner for making the request."

A.R.S. § 33–1491(A)(3) provides:

"A. Except as provided in this section, a landlord shall not retaliate by increasing rent or decreasing services or by bringing or threatening to bring an action for eviction after any of the following:

\*    \*    \*    \*    \*    \*

Second, the tenants alleged that the conduct of the landlord in giving notice of a rent increase did not constitute "good faith" negotiations as that term is defined in A.R.S. § 33–1409 and A.R.S. § 33–1413.

After trial on the merits based upon evidence presented at a hearing on the tenants' request for a preliminary injunction, the trial judge entered judgment for the landlord, finding that the notice of rent increase was not a retaliatory act on the landlord's part, and further that the Mobile Home Tenancy Act was not a "rent control act" and that the landlord could increase or decrease rent without negotiating the amount thereof with the tenants.

The evidence presented at the hearing showed that the landlord had purchased the mobile home park in December 1980, and that there had been annual increases in rent, effective in February of each year, since 1977.

On August 6, 1981, the tenants presented to the landlord a request that they be furnished with written rental agreements in compliance with the Arizona Mobile Home Park Residential Landlord and Tenant Act. Following this request by the tenants, the landlord arranged for a meeting with the tenants at the park on September 16, 1981. At that meeting a proposed new draft of a written rental agreement was discussed along with proposed written rules and regulations for the park. The landlord also made the tenants aware of a proposed increase in rent. Thereafter, there was an exchange of correspondence indicating good faith discussion between the parties concerning the terms of the proposed new rental agreement and the proposed rules and regulations. On November 24, 1981, the landlord gave written notice to the tenants of the previously discussed rental increase, to become effective February 1, 1982.[2]

Thereafter, in February of 1982, the tenants and their legal representative met again with the landlord and proposed as a compromise a lesser rent increase. The landlord refused, making clear the owner's position that the amount of the rental increase was firm and not subject to negotiation. The tenants then commenced this litigation seeking injunctive relief and damages on the theories previously set forth in this opinion.

On appeal the tenants do not contend that the landlord's evidence did not furnish support for the proposed increase in rent or that the trial judge erred in finding that the increase was not a retaliatory act on the owner's part. Nor do they contend that the landlord failed to give them notice of the proposed increase at least 60 days prior to the expiration of their then existing rental agreements. Rather, their contention is that whenever a tenant makes an appropriate demand pursuant to A.R.S. § 33–1413(A), the landlord must negotiate in good faith the amount of the rent to be charged.[3]

A.R.S. § 33–1413(A) and (B) provide as follows:

"A. At the request of either the landlord or the tenant, a signed, written rental agreement must be executed. The term of the rental agreement is twelve months unless the tenant requests a shorter term. The rental agreement shall be negotiated in good faith by both parties and shall not provide for the waiver of any rights given to either party by other provisions of this chapter. If a tenant requests a written rental agreement, the landlord shall not penalize the tenant in any manner for making the request.

"3. The tenant has organized or become a member of a tenant's union or similar organization."

**2.** A.R.S. § 33–1413(G) requires that the tenant be notified in writing of any increase in rent "at least sixty days prior to the expiration or renewal of any rental agreement."

**3.** There is no contention that the landlord did not negotiate in good faith concerning all other provisions of the proposed new lease and the proposed new rules and regulations governing the use of the mobile home park.

"B. The landlord and tenant shall include in a rental agreement terms and conditions not prohibited by this chapter or other rule of law *including rent,* term of the agreement and other provisions governing the rights and obligations of the parties."

(Emphasis added).

■ It must be admitted that when the above-quoted subsections are considered alone, there is statutory support for the tenants' contention that rent is one of the terms of the written rental agreement which must be negotiated in good faith by the parties. However, statutory provisions must be considered in the context of the entire statute and consideration must be given to all of the statute's provisions so as to arrive at the legislative intent manifested by the entire act. *See Karol v. Board of Education Trustees, Florence Unified School Dist. Number One of Pinal County,* 122 Ariz. 95, 593 P.2d 649 (1979); *Greyhound Parks of Ariz., Inc. v. Waitman,* 105 Ariz. 374, 464 P.2d 966 (1970); *Street v. Commercial Credit Co.,* 35 Ariz. 479, 281 P. 46 (1929). Applying this principle, A.R.S. § 33–1413(G)[4] provides as follows:

"G. *Notwithstanding any provision of this article to the contrary,* upon the expiration or renewal of any rental agreement, the landlord may increase or decrease the total rent or change payment arrangements. The landlord shall notify the tenant in writing at least sixty days prior to the expiration or renewal of any rental agreement of any such increase or change."

(Emphasis added).

In our opinion subsection (G) was intended by the legislature to negate any statutory implication which might otherwise exist concerning the discretion of the landlord to increase or decrease rent, and the trial judge so found. However, the tenants contend that subsection (G) applies only where a rental agreement has expired or is renewed *and there has not been a demand for a good faith negotiation of a rental agreement.* This argument might be persuasive were it not for the language "notwithstanding any provision of this article to the contrary" found in subsection (G). Such language gives overriding significance to subsection (G), rendering inapplicable any implication that the negotiation language of subsection (A) is to be considered as limiting the discretion given to the landlord by subsection (G). As previously indicated, the tenants have not contended that they were not given timely notice before the expiration of their prior rental agreements.

Relying upon subsection (I), the tenants additionally urge that if a landlord desires to increase the amount of the rent, and the tenant objects, the landlord is allowed to increase the rent only if he can substantiate or document the increased rent by an increase in the actual cost of running the mobile home park. Subsection (I) reads as follows:

"I. In addition to any other rental provisions, the landlord is entitled to a rental increase effective at the expiration or renewal of any rental agreement or effective immediately if so provided in a written rental agreement to compensate him for actual costs of insurance, taxes and rate increases for utilities, which shall be substantiated by the landlord in writing to the tenant."

Considered in the abstract, the tenants' argument concerning subsection (I) is technically correct, but that subsection has no application to a situation where the landlord has given timely notice (pursuant to A.R.S. §§ 33–1413(G) and 33–1432(F)) of a proposed rent increase. Subsection (I) was enacted in 1979 along with other amendments which for the first time provided for the automatic renewal of rental agreements unless either party within specified times prior to expiration notified the other

---

4. Reference in this opinion is to A.R.S. § 33–1413, as amended, 1983. The contents of A.R.S. § 33–1413(G) are identical to the provisions found in A.R.S. § 33–1423(F) at the time of the hearing in the trial court. Likewise, subsection (I), subsequently referred to in this opinion, is identical to subsection (H) which was in effect at the time of the hearing.

party of an intent not to renew. Considered in that context, and when so provided in the rental agreement, in our opinion subsection (I) was intended to give rent increase rights to the landlord over and above any rights which he might have after giving the 60 day notice required by subsection (G). Thus, under subsection (I), even in the absence of compliance with subsection (G), the landlord is given permission to increase the rent at the expiration or renewal of the rental agreement in an amount sufficient to compensate for actual increases in "costs of insurance, taxes and rate increases for utilities."

■ In summary, while recognizing that rental increases may not be imposed in a retaliatory or punitive manner contrary to A.R.S. §§ 33–1413(A) or 33–1491(A), we hold that the Arizona Mobile Home Parks Residential Landlord and Tenant Act does not require a landlord to "negotiate in good faith" concerning a proposed rental increase or decrease.

The judgment is affirmed.

EUBANK, J., concurs.

MEYERSON, Judge, dissenting:

I dissent because the majority opinion ignores the unambiguous language of A.R.S. § 33–1413.G. Although this section does not preclude the landlord from increasing or decreasing rent upon the expiration or renewal of a rental agreement, the Act unequivocally provides for good faith negotiations with respect to establishing the initial terms of a rental agreement, including the rent itself.

The Act's legislative history bears out this conclusion. As originally enacted, A.R.S. § 33–1413.A. provided as follows:

The landlord and tenant may include in a rental agreement terms and conditions not prohibited by this chapter or other rule of law including rent, term of the agreement and other provisions governing the rights and obligations of the parties.

1975 Laws, ch. 142, § 1. In 1979, the Act was amended to reflect its current language containing the express provision that the rental agreement shall be negotiated in good faith. 1979 Laws, ch. 36, § 2. Subsection (G) was also added in 1979.

Both the current law and the former law contain an identical section stating that "[e]very duty under this chapter and every act which must be performed as a condition precedent to the exercise of a right or remedy under this chapter imposes an obligation of good faith in its performance or enforcement." A.R.S. § 33–1410. Given the 1979 amendment and the overriding duty with respect to good faith contained in A.R.S. § 33–1410, the majority's refusal to adhere to the clear and unambiguous limitation in A.R.S. § 33–1413.G. contradicts basic principles of statutory construction.

The only restrictive language of A.R.S. § 33–1413.G. clearly provides that the duty of good faith negotiation is not obligatory "upon the expiration or renewal of any rental agreement." The landlord in this case makes no contention that a prior written rental agreement existed. Thus the increase to be effective on February 1, 1982, could therefore not be an increase upon the "expiration or renewal" of a previously existing rental agreement and therefore subsection (G) has no applicability in the present case.