714 P.2d 872

MOBILE HOME OWNERS ASSOCIATION OF HOLIDAY ISLE, an unincorporated association; the Mobile Home Owners of Arizona, Inc., an Arizona corporation; E.L. Hott, a married man; Bill Helsper, a married man; Frank Gibes, a married man; Paul Ross, a married man; E.L. Smith, a married man, "John Doe" 1–150, Plaintiffs/Appellants,

v.

Daniel O. BOOKER and "Jane Doe" Booker, husband and wife, dba Holiday Isle Mobile Home Resort, XYZ Corporation, an unknown corporation; XYZ Partnership, an unknown partnership, Defendants/Appellees.

No. 2 CA–CIV 5525.

Court of Appeals of Arizona, Division 2, Department B.

Jan. 15, 1986.

---

O. Booker and Jane Doe Booker, husband and wife, dba Holiday Isle Mobile Home Resort, denying them relief and awarding Bookers' attorney's fees and costs. The facts and the issues were presented to the trial court by stipulation of the parties and required an interpretation of the Arizona Mobile Home Parks Residential Landlord and Tenant Act, particularly the provisions of A.R.S. § 33–1413. The trial court held that nothing in the act requires rents to be frozen when a tenant requests a written rental agreement and that a provision in a proposed written rental agreement for a different amount of rent during the second half of the term is valid. We agree and affirm.

## STIPULATION OF FACTS

The facts as stipulated by the parties which are material and support the judgment of the trial court are:

16. By letter dated February 13, 1984, attached to the Plaintiffs' Complaint as Exhibit 'E', the Homeowners Association requested that a form of rental agreement be provided to the Homeowners Association no later than February 28, 1984, in order that the Homeowners Association could review the same and recommend any changes beneficial to the association residents. Also, on or about the same date, 105 association residents requested, by written notice, a one (1) year signed, written rental agreement. Association residents who took this action thereby intended to freeze their rent from March 1, 1984, through April 30, 1985, at the current rate, because the said association residents anticipated and suspected a rent increase to be forthcoming in August, 1984, and desired to act prior to receiving written notice of the said rental increase.

\* \* \* \* \* \*

18. The managers of the Holiday Isle, while so providing most (but possibly not all) association residents with a form of rental agreement, orally stated to most (but possibly not all) association residents receiving the same that the latter

K.C. Stanford, Tucson, for plaintiffs/appellants.

Christoffel & Zickerman by Patrick J. Peartree, Tucson, for defendants/appellees.

## OPINION

LACAGNINA, Judge.

Mobile Home Owners Association, et al., appeal from a judgment in favor of Daniel

parties should review the form of rental agreements and thereafter should make contact with the said managers in order to complete the same.

19. Because blank spaces existed on the form of rental agreement so provided by the Owners, the association residents who had obtained the same believed that the said form of rental agreements were wholly illegal.

20. No attempt was made by the said association residents to thereafter contact the managing agents of the Owners to complete and execute the proposed form of rental agreement. Some association residents informed the said managing agents that it was their belief that the form of rental agreement was illegal. Association residents also did not return to complete and execute the form of rental agreement because of the provisions of Paragraph IV thereof. Paragraph IV of the proposed form of rental agreement contained a clause permitting an increase in the amount of rent payable in the sixth (6th) month of the twelve (12) month term of the proposed rental agreement.

\* \* \* \* \* \*

23. On March 13, 1984, approximately thirteen (13) days after the Owners provided the unexecuted forms of rental agreements (with blank spaces), the association residents filed the instant action, claiming, among other things, that the provision for rent increase in the sixth (6th) month of the twelve (12) month term of the proposed rental agreement was illegal. The association residents rely upon A.R.S. Section 33–1413(a) and A.R.S. Section 33–1491(a) in support of their claim that because of the formal request on February 13, 1984 for a written form of rental agreement to be provided by the Owners not later than February 28, 1984, the Owners would thereby [be] unable to raise the rents until March 1, 1984, of the successive year (1985).

## STIPULATED ISSUES

The parties stipulated that the following were the issues to be decided:

1. When a tenant (resident) requests, pursuant to A.R.S. § 33–1413(A), a signed, written rental agreement, is the then existing amount of the rent "frozen" for a 12 month period subsequent to the request, assuming that no prior written notification of a rental increase was in existence at the time of the said request?

2. Does the word "term" in A.R.S. § 33–1413 mean merely the fixed length of time which the rental agreement covers, or does it mean the fixed length of time *and* the fixed amount of rent which may be included in a rental agreement (i.e., may a landlord provide in the written rental agreement for increase in the amount of rent during the term of the rental agreement)?

■■■ We agree with the trial court that nothing in the act requires rents to be frozen when a tenant requests a written rental agreement; that it does not make unlawful, in response to such a request, the issuance of an agreement containing a blank to be filled in after negotiations; nor does it require monthly rental payments to be equal during the lease term. A.R.S. § 33–1413(A) and (B) require landlords and tenants to negotiate in good faith when there has been a request for a signed, written rental agreement. The language of the statute is clear and simple, and by no stretch of the imagination does it expressly or impliedly require that the rent under a completed agreement be for the same monthly amount during the term of the agreement, nor does it permit an interpretation that upon a request by the tenant for a written rental agreement, rents being charged at that time are automatically frozen.

The statute requires the landlord and tenant, upon request, to negotiate a rental agreement. The exact terms of that agreement will be the result of the negotiations between the parties. Any other interpretation would make the words "negotiate in good faith" meaningless. *See Hill v. Gila*

**382**

County, 56 Ariz. 317, 107 P.2d 377 (1940); *One Hundred Eighteen Members v. Murdock*, 140 Ariz. 417, 682 P.2d 422 (App. 1984); *Adams Tree Service, Inc. v. Transamerica Title Ins. Co.*, 20 Ariz.App. 214, 511 P.2d 658 (1973).

Reliance on the provisions of A.R.S. § 33–1432(D), (E), (F) and (G) by Mobile Home is misplaced since those provisions require the existence of a written rental agreement or are not otherwise applicable to the stipulated facts.

Division One of this court in *Murdock, supra,* decided that upon demand by tenant for a written rental agreement, the landlord must negotiate in good faith all terms of the agreement *except* rent to be charged. After a written rental agreement is executed by landlord and tenant, increases and decreases in rent are governed by A.R.S. § 33–1413(G) and (I).

### ATTORNEY'S FEES

■ The award of attorney's fees and costs to the successful parties, Bookers, is discretionary and authorized by A.R.S. § 33–1408(C). The reasonableness of the amount awarded is not at issue. The statute authorizing attorney's fees also requires the court to award reasonable attorney's fees upon clear and convincing evidence that the claim is groundless and not made in good faith.

When reviewing discretionary awards for attorney's fees, given pursuant to a statute authorizing the award, we will affirm if there is any reasonable basis for the exercise of that discretion. *Associated Indemnity Corp. v. Warner*, 143 Ariz. 567, 570, 694 P.2d 1181, 1184 (1985), quoting *Jones v. Queen Insurance Co.*, 76 Ariz. 212, 214, 262 P.2d 250, 251 (1953). Here, the award can be justified as a discretionary award to the successful party to mitigate the burden of expensive litigation in establishing a just defense.

Affirmed.

LIVERMORE, P.J., and HOWARD, J., concur.