2012 CO 24

**Daniel Shane HASSLER, Petitioner**

v.

**ACCOUNT BROKERS OF LARIMER COUNTY, INC., Respondent.**

No. 09SC519.

Supreme Court of Colorado,
En Banc.

April 16, 2012.

Larry Dean Valente, Westminster, Colorado, Attorney for Petitioner.

Adam L. Plotkin, P.C., Adam L. Plotkin, Steven J. Wienczkowski, Denver, Colorado, Attorneys for Respondent.

Silverman/Borenstein, PLLC, Stephen S. Allen, First American Title Insurance Co., Bryan W. Thomas, Englewood, Colorado, Attorneys for Amici Curiae Colorado Creditors Bar Association and ACA International.

Chief Justice BENDER delivered the Opinion of the Court.

## I. Introduction

¶1 In this appeal, we review the order of the Jefferson County District Court upholding the county court's determination that the six-year statute of limitations contained in section 13–80–103.5(1)(a), C.R.S. (2011), did not bar respondent Account Brokers of Larimer County, Inc.'s claim against petitioner Daniel Shane Hassler. *Account Brokers v. Hassler*, No. 2009CV444 (Jefferson Cnty. Dist. Court May 19, 2009).

¶2 Hassler financed the purchase of a vehicle by entering into a security agreement with Account Brokers' predecessor-in-interest, Norlarco Credit Union, in which the vehicle served as collateral. The security agreement provided that the balance of the loan plus the attendant interest would be repaid in monthly installments. When Hassler later defaulted on his loan, Norlarco first repossessed the vehicle and then later sold it at auction. Norlarco applied the proceeds of the auction to the balance of the loan. The proceeds, however, were insufficient to cover the balance, and thus Hassler remained indebted for the deficiency. Norlarco eventu-

ally transferred this debt to Account Brokers, who initiated the present suit. Account Brokers sued Hassler to recover the deficiency less than six years after the vehicle was sold at auction but more than six years after Hassler defaulted on the loan and the vehicle was repossessed. Ruling in favor of Account Brokers, both the county court and district court on appeal determined that the statute of limitations did not bar Account Brokers' claim because the amount of the deficiency was not "liquidated or determinable" until Norlarco sold the vehicle at auction.

¶ 3 We reverse. The relevant legal inquiry under the statute of limitations is the date that the debt was made liquidated or determinable but rather the date that the debt accrued, which section 13–80–108, C.R.S. (2011), entitled "When a cause of action accrues," defines as the date that the debt became due. § 13–80–108(4). We hold that under Colorado law and the express terms of the parties' security agreement, the present debt became due when it was accelerated following Norlarco's repossession of the vehicle and demand for full payment on the debt, which occurred more than six years before the initiation of the present suit. Accordingly, the action is barred by the statute of limitations.

¶ 4 Construing sections 13–80–103.5(1)(a) and 13–80–108(4), we conclude that the six-year statute of limitations for an action based upon the rights set forth in a security agreement begins to run on the date that the cause of action accrues, which is the date that the debt first becomes due. For a security agreement that is to be repaid in installments, the debt for each installment becomes due on the date that each installment is missed. Once an installment security agreement is validly accelerated, however, the entirety of the remaining balance becomes due and therefore the cause of action to collect the entire debt accrues.[1]

¶ 5 In this case, Norlarco invoked the security agreement's optional acceleration clause by repossessing Hassler's vehicle on October 30, 2001, and sending him a letter shortly thereafter demanding that he repay the entirety of his debt. Because Account Brokers, Norlarco's successor-in-interest, filed its claim to collect the remainder of the debt on May 7, 2008, which was more than six years later, we hold that the present claim is barred by the statute of limitations. Thus, we remand the case to the district court to be returned to the county court for proceedings consistent with this opinion.

## II. Facts and Procedural History

¶ 6 In October 2000, Hassler financed the purchase of a vehicle for $28,565.25 through Norlarco Credit Union. A security agreement, entitled "Open–End Voucher and Security Agreement," set forth the terms of the parties' agreement. The security agreement obligated Hassler to pay monthly installments of $523.00 beginning on November 19, 2000, and gave Norlarco a security interest in the vehicle Hassler purchased.

¶ 7 The security agreement defined default as "break[ing] any promise you make under this agreement." Paragraph 10 of the security agreement, entitled "What Happens if You Are in Default," specified the consequences of default to borrowers in different states. For Colorado borrowers, the security agreement authorized Norlarco to accelerate the loan and to require immediate payment of the outstanding balance at its option after the expiration of any statutory right to cure the default, stating:

> When you are in default and *after expiration of any right you have under applicable state law to cure your default,* we can require immediate payment of your outstanding balance under the Plan without giving you advance notice.

(Emphasis added.) Paragraph 10 of the security agreement also included a reposses-

---

1. As we explain *infra* in footnote 11, with respect to when an accelerated debt "becomes due," prevailing Colorado case law, which predates Colorado's adoption of the Uniform Commercial Code (UCC), is potentially at odds with the rule that a majority of states have adopted following their implementation of the UCC. However, as also explained *infra,* because under either rule the date that the accelerated debt became due in this case was more than six years before the present claim was filed, we decline to address whether this prevailing Colorado case law remains good law in light of Colorado's subsequent adoption of the UCC.

sion provision. The repossession provision authorized Norlarco to take possession of the collateral, sell the collateral, and apply the proceeds of the sale to the amount owed on the loan. The borrower would then be liable for any remaining deficiency. In pertinent part, the repossession provision stated:

> You agree [Norlarco] has the right to take possession of the property without judicial process if this can be done without breach of the peace.... After we have possession of the property, we can sell it and apply the money to any amounts you owe us.... If you have agreed to pay the advance, you will also have to pay any amount that remains unpaid after the sale money has been applied to the unpaid balance of the advance and to what you owe under the agreement.

¶ 8 Hassler made his last payment on the loan on April 21, 2001. He attempted to make payments in May 2001 and June 2001, but Norlarco reversed these credits in July 2001 because Hassler had insufficient funds to cover the payments. Norlarco repossessed the vehicle on October 30, 2001. At or around the time that Norlarco repossessed the vehicle, Norlarco sent Hassler an undated letter, entitled "NOTICE OF OUR INTENT TO SELL PROPERTY," which gave notice that it had repossessed the vehicle and that it intended to sell the vehicle sometime after November 10, 2001. The letter stated that the amount obtained from the vehicle's sale would reduce the amount Hassler owed and that Hassler would be liable for any deficiency remaining after the sale. The letter also notified Hassler that he could get his vehicle back before it was sold by paying Norlarco the full amount owed on the loan. It stated, "You can get the property back at any time before we sell it by paying us *the full amount you owe (not just the past due payments)*, including our expenses." (Emphasis added.) The wording used in the letter was identical to the model language set forth in the "safe-harbor" provision found in section 4–9–614, C.R.S. (2011), which requires a creditor to provide a debtor with notice of the right to redeem the repossessed collateral before disposing of it.

¶ 9 After a failed attempt to sell the vehicle through a consignment agreement with a car dealership, Norlarco sold the vehicle at auction on June 4, 2002. The vehicle sold for $17,500, and those proceeds were applied to the outstanding balance, which resulted in a deficiency of $11,637.11. In a letter dated June 4, 2002, Norlarco notified Hassler that he owed a deficiency balance in the amount of $11,637.11 and that this amount was due to Norlarco within five days, unless Hassler contacted Norlarco and agreed to a new installment plan.

¶ 10 Hassler did not pay, and in March 2008, Norlarco assigned Hassler's debt to Account Brokers for collection.[2] Account Brokers filed suit against Hassler in Jefferson County Court on May 7, 2008, approximately five years and eleven months after the sale of the vehicle but more than six and a half years after Norlarco's repossession. As his only defense, Hassler asserted that the six-year statute of limitations set out in section 13–80–103.5(1)(a) barred Account Brokers' claim for recovery. Before the county court, the parties stipulated to all material facts, including the amount of the deficiency balance plus interest.[3] Further, the parties stipulated that the sole issue before the county court was whether the statute of limitations barred Account Brokers' claim.

¶ 11 In its December 2008 order, the county court magistrate ruled that the statute of limitations did not bar Account Brokers' action because the cause of action did not accrue until June 5, 2002, the day after the vehicle was sold, which was less than six years before Account Brokers filed its complaint. The court reasoned that the debt, which in this case was the deficiency balance, was not liquidated or determinable until the vehicle was sold or, alternatively, that Hassler made his last payment on the debt when the vehicle was sold. The court found for

---

**2.** Hassler does not challenge the validity of this assignment.

**3.** Account Brokers elected to limit its damages to $15,000 to keep the claim within the jurisdiction of the county court.

Account Brokers in the amount of $15,000 plus costs.

¶ 12 On appeal, the district court affirmed the county court's judgment, also concluding that the cause of action accrued the day after the vehicle was sold because, until then, the debt was not liquidated or determinable:

> Although the loan did have an acceleration clause that would have made the entire loan amount due on the date of default, Appellee Account Brokers' assignor Norlarco was acting in accordance with the [UCC], C.R.S. § 4–9–601 et. [sic] seq., when it mitigated its damages by disposing of the collateral in a "commercially reasonable manner" and attempting to collect only deficiency debt rather than the entire loan amount. Therefore, the debt was not liquidated or of a determinable amount until the deficiency amount was determined after the car was sold on June 4, 2002, making June 5, 2002 the date that the cause of action accrued.

Based on this reasoning, the district court concluded that Account Brokers timely filed its claim within the six-year statute of limitations contained in section 13–80–103.5(1)(a).

¶ 13 Hassler petitioned this court for further review, and we granted certiorari.[4]

### III. Analysis

¶ 14 Upon review, we disagree with the district court and hold that this action was time-barred because the balance sought by Account Brokers became due when Norlarco unilaterally accelerated the debt by repossessing the vehicle and demanding repayment in full in the undated repossession letter. We reach this conclusion by first interpreting the six-year statute of limitations in section 13–80–103.5, which in turn

is defined in part by section 13–80–108(4) (defining when a cause of action for a debt accrues), and hold that the statute of limitations for the recovery of a debt under a security agreement is triggered whenever the debt "becomes due" by the terms of the agreement. Next, we hold that, pursuant to the parties' security agreement, the remaining balance of Hassler's debt became due when Norlarco invoked its option to accelerate the debt, as evidenced through the unequivocal act of repossessing the vehicle and demanding repayment in full. Under both the relevant statutes and the express terms of the parties' security agreement, Norlarco was entitled to invoke its unilateral option to accelerate the present debt and did so when it informed Hassler that he could only retake possession of his repossessed property by paying the entire balance of the loan—and not merely the outstanding balance of the lapsed monthly installments. Accordingly, because this acceleration occurred more than six years before the initiation of the present action, we hold that the present claim is time-barred.

### A. The Statute of Limitations

¶ 15 Initially, we must interpret the statutory scheme to determine when the relevant statute of limitations was triggered in the instant case. Statutory interpretation involves a question of law, which we review de novo. *Smith v. Exec. Custom Homes, Inc.*, 230 P.3d 1186, 1189 (Colo.2010). When construing a statute, our goal is to determine and give effect to the intent of the General Assembly. *People v. Perez*, 238 P.3d 665, 669 (Colo.2010). Before resorting to canons of statutory interpretation, we look to the plain and ordinary meaning of the words in a statute. *Id.* If the statutory provisions are

---

4. We granted certiorari on the following issue:

Whether the district court erred in upholding the county court magistrate's order finding that the six-year statute of limitations set forth in section 13–80–103.5(1)(a), C.R.S. (2009), began to run the day after the sale of a repossessed vehicle rather than the day after the default of the contract to purchase the vehicle occurred.

Following an initial round of briefing and oral arguments, we requested additional supplementary briefing on the following issues:

1. Under the parties' agreements, did Account Brokers accelerate future payments owed on the car such that they became due immediately, and if so, on what date did this acceleration occur.
2. Under the six-year statute of limitations defined in section 13–80–103.5(1), C.R.S. (2011), what would be the accrual date on which the debt claimed in this case became due, pursuant to section 13–80–108(4), C.R.S. (2011).

clear, we apply their plain and ordinary meaning. *CLPF–Parkridge One, L.P. v. Harwell Invs., Inc.,* 105 P.3d 658, 660 (Colo. 2005).

¶ 16 Of the several statutes relevant to this case, we begin with the statute of limitations set forth in section 13–80–103.5(1)(a). That section applies a six-year statute of limitations to specified types of actions to recover a debt, including all actions to enforce the rights set forth in an instrument securing the payment of debt:

> (1) The following actions *shall be commenced within six years after the cause of action accrues* and not thereafter:
>
> > (a) All actions to recover a liquidated debt or an unliquidated, determinable amount of money due to the person bringing the action, *all actions for the enforcement of rights set forth in any instrument securing the payment of or evidencing any debt,* and all actions of replevin to recover the possession of personal property encumbered under any instrument securing any debt....

§ 13–80–103.5(1)(a) (emphasis added). By its terms, section 13–80–103.5(1)(a) states that the six-year statute of limitations for an action based upon the rights set forth in an instrument securing the repayment of a loan is triggered on the date that "the cause of action accrues." *Id.; see also Nagy v. Landau,* 807 P.2d 1227, 1228 (Colo.App.1990) (stating that section 13–80–103.5 requires "all actions of debt founded upon any contract ... to be commenced within six years after the cause of action accrued").

¶ 17 To determine when the present cause of action accrued, we next turn to section 13–80–108, which sets forth multiple provisions that establish the accrual date for different types of civil actions. Pertinent here, subsection 13–80–108(4) applies to causes of action to recover a "debt, obligation, money owed, or performance" and states that such actions "*shall be considered to accrue on the date such debt,* obligation, money owed, or performance *becomes due.*" § 13–80–108(4) (emphasis added).

■ ¶ 18 Hence, construing sections 13–80–103.5(1)(a) and 13–80–108(4) together, the statute of limitations for a debt owed pursuant to the rights set forth in a security instrument for the repayment of debt begins to run when the action accrues, which occurs on the date that the debt becomes due. Therefore, in order to determine when the statute of limitations began to run in the present matter, we must ascertain when the remaining balance of the debt that Hassler owed to Norlarco became due.

■ ¶ 19 Here, our analysis departs from that of the district court. The district court correctly held that section 13–80–103.5(1)(a) is the appropriate statute for determining when the present statute of limitations period began to run. However, in determining when this "cause of action accrue[d]," rather than look to section 13–80–108(4), the district court erroneously applied the first clause of section 13–80–103.5(1)(a), which pertains to "[a]ll actions to recover a liquidated debt or an unliquidated, determinable amount of money due." Thus, instead of asking when the present debt "became due," the district court incorrectly looked to see when the present debt became either liquidated or determinable. This was in error because the present action was not one to recover a liquidated or determinable debt, but was instead an action to enforce a debt secured under an instrument, as contemplated by the second clause of section 13–80–103.5(1)(a).

¶ 20 Although no Colorado appellate court has ever explicitly parsed the clauses of section 13–80–103.5(1)(a), the plain meaning of the statutory text indicates that this action is one "for the enforcement of rights set forth in [an] instrument securing the payment of or evidencing [a] debt" and thus falls under the category of actions included in the second clause. *See* § 13–80–103.5(1)(a). This claim is an attempt by Account Brokers to recover the debt that Hassler incurred to purchase the vehicle under the parties' loan and security agreement. This instrument was executed contemporaneously with the purchase of the vehicle to memorialize the total amount that Hassler owed to Norlarco. *See Mortg. Invs. Corp. v. Battle Mountain Corp.,* 70 P.3d 1176, 1184–85 (Colo.2003) (applying, with no discussion, the second clause of section 13–80–103.5(1)(a) to a debt secured un-

der a promissory note); *Tivoli Ventures, Inc. v. Bumann,* 870 P.2d 1244, 1246 (Colo.1994) (same).

¶ 21 Thus, the date on which the present action accrued does not depend on whether Hassler's debt was liquidated or determinable.[5] Instead, as clearly set forth in section 13–80–108(4), an action for the recovery of debt, like that at issue in the present matter, must be made pursuant to the terms of the parties' agreement and accrues on the date that the debt became due.

### B. Acceleration of the Debt and Accrual of the Claim

¶ 22 Accordingly, we now turn to the question of when the portion of Hassler's debt that is now sought by Account Brokers "became due." As the framework for our analysis, we begin by acknowledging the manner in which a statute of limitations must be applied to obligations that are to be repaid in installments. The general rule provides that "[a] separate cause of action arises on each installment, and the statute of limitations runs separately against each." 31 Richard A. Lord, *Williston on Contracts* § 79:17 (4th ed. updated 2011); *see also In re Church,* 833 P.2d 813, 814–15 (Colo.App.1992); *Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal.,* 522 U.S. 192, 208–09, 118 S.Ct. 542, 139 L.Ed.2d 553 (1997). However, if an obligation that is to be repaid in installments is accelerated either automatically by the terms of the agreement or by the election of the creditor pursuant to an optional acceleration clause—the entire remaining balance of the loan becomes due immediately and the statute of limitations is triggered for all installments that had not previously become due. *See* Lord, *supra,* at §§ 79:17,:18; *In re Church,* 833 P.2d at 815;

*Bay Area Laundry,* 522 U.S. at 208–09, 118 S.Ct. 542.

¶ 23 Both Hassler and Account Brokers agree that the security agreement contained an optional acceleration clause that could be unilaterally invoked by the creditor following default and the expiration of the debtor's right to cure. Thus, the relevant inquiry for determining when the present action accrued is whether Norlarco exercised its option to accelerate Hassler's debt. If Norlarco did accelerate the debt, then the ultimate issue becomes on what date did this occur and trigger the statute of limitations governing the present action. Hassler argues that Norlarco invoked the optional acceleration clause by repossessing the vehicle and demanding full payment on the entire balance of the loan in its undated repossession letter. Conversely, Account Brokers contends that acceleration did not occur until the repossessed vehicle was sold and Norlarco sent Hassler a demand for the deficiency balance.

¶ 24 "In the case of an acceleration provision exercisable at the option of the [creditor], the [creditor] must perform some clear, unequivocal affirmative act evidencing his intention to take advantage of the accelerating provision." *Moss v. McDonald,* 772 P.2d 626, 628 (Colo.App.1988). Colorado appellate courts have only considered this issue on two prior occasions, and in each instance the actions of the creditor were held not to amount to an unequivocal act of acceleration. In *Moss v. McDonald,* a panel of the court of appeals held that, despite the fact that that case involved an acceleration provision that by its own terms allowed for the debt to be accelerated "without demand or notice," some affirmative act was still required on the part of the creditor to put the debtor on

---

**5.** By its very terms, a debt instrument like the one at issue here is always determinable because the precise value of the debt is stipulated in the agreement itself. The fact that the parties' agreement authorized Norlarco to mitigate its potential damages by foreclosing on the vehicle in the event of default did nothing to impact the determinability of the amount that Hassler owed under the instrument. Accordingly, the disposition of the collateral was not an act by Norlarco that liquidated the debt. Instead, the auction proceeds were merely available, by the terms of the

agreement, to be used as a setoff for the debt that the parties agreed to at the execution of the security agreement. While Norlarco is correct that the UCC mandates that the disposition of repossessed property be carried out in a commercially reasonable manner, the reasonableness of the sale and the corresponding amount of the setoff are only relevant to determining the deficiency balance and do not impact when the debt became due and when Norlarco's claim accrued under the terms of the parties' security agreement.

notice that the debt had been accelerated. 772 P.2d at 628. Following the same reasoning, another panel of the court of appeals held in *Bauer Development Co. v. Nu–West, Inc.* that this unequivocal notice requirement was not satisfied by two letters sent by a creditor threatening foreclosure if the debtor did not make payment on the outstanding balance of the installments that had already become due. 757 P.2d 1149, 1150 (Colo.App. 1988).

¶ 25 Although neither *Moss* nor *McDonald* contained significant analysis of why a clear, unequivocal act is necessary to invoke an optional acceleration clause, this principle is consistent with that adopted by a majority of other states. *See, e.g.,* Am.Jur.2d, Bills and Notes § 170; *U.S. v. Feterl*, 849 F.2d 354, 357 (8th Cir.1988); *KIXX, Inc. v. Stallion Music, Inc.,* 610 P.2d 1385, 1388–89 (Utah 1980); *State Sec. Sav. Co. v. Pelster*, 207 Neb. 158, 296 N.W.2d 702, 706 (1980). These jurisdictions require that the "exercise of the option . . . be made in a manner so clear and unequivocal as to leave no doubt as to the holder's intention and to apprise the maker effectively of the fact that the option has been exercised." 5 A.L.R.2d 968, § 4[a].

¶ 26 At the county court, the parties stipulated that Norlarco repossessed the vehicle on October 30, 2001, and sent Hassler an undated letter on or shortly after the date of repossession.[6] In this letter, Norlarco informed Hassler that it was planning to invoke its contractual right to sell his repossessed property and expressly stated: "You can get the property back at any time before we sell it by paying us the full amount you owe (*not just the past due payments*), in-

cluding our expenses." (Emphasis added). At this point, Norlarco held possession of the vehicle and Hassler was on notice that he could only regain possession of the vehicle by paying the full amount of the loan and not merely by paying his missed installments to become current on the loan. Thus, it was on this unknown date that Norlarco elected to consolidate the remainder of the loan and claimed this entire balance against Hassler.[7] We hold, as a matter of law, that Norlarco's repossession of the vehicle coupled with this demand for full payment left no doubt as to Norlarco's intention and apprised Hassler of the fact that Norlarco was accelerating the debt. Consequently, Norlarco's affirmative acts constituted a clear, unequivocal intent to accelerate all remaining installments due under the parties' agreement.[8]

¶ 27 Account Brokers makes three alternative arguments as to why Norlarco's repossession and demand for full payment did not amount to acceleration: (1) the undated letter merely parroted the sample "safe-harbor" language provided in section 4–9–614(a)(3) and, thus, its adherence to this legal obligation cannot be used to evince a subjective intent to accelerate; (2) any attempt to accelerate could not have been valid because the record does not contain evidence that Norlarco first provided Hassler with notice of the right to cure as required by the Uniform Consumer Credit Code (UCCC) and the terms of the parties' security agreement; and (3) even if the repossession and the undated letter evinced an intent to accelerate, Norlarco's actions were equivocal as evidenced by the monthly statements that it

6. The undated letter stated that the repossessed vehicle would be sold sometime after November 10, 2001.

7. At oral argument, Account Brokers argued that, before the county court, Hassler effectively waived any claim that the debt was accelerated prior to the sale of the vehicle. After reviewing the record, however, we find that this contention is unsupported. On the contrary, the record indicates that Hassler argued that the debt was accelerated when Norlarco repossessed the vehicle.

8. Although we hold that acceleration occurred at or around the time of repossession, we also note that if, as held by the district court, acceleration

did not occur prior to Norlarco's disposition of the vehicle and the sale was merely intended "to collect only the deficiency debt rather than the entire loan amount," Norlarco should have returned any surplus from the auction. Account Brokers argues that at the time of the auction, Norlarco had not accelerated the debt and therefore Hassler only owed $6,035 as a result of the lapsed monthly installments. If this were the case, however, once Norlarco received $17,500 for the repossessed collateral at auction, it would have only been authorized to apply the proceeds to the outstanding $6,035 and would have immediately been required to return $11,465 (as the surplus) to Hassler.

continued to send Hassler, which showed that his monthly installments continued to lapse. We address each of these arguments below and ultimately find each unpersuasive.

¶ 28 First, Account Brokers argues that the demand for full payment on Hassler's debt in the undated repossession letter cannot be considered a manifestation of its unequivocal intent to accelerate because the language in the letter was copied from section 4–9–614(a)(3). Section 4–9–614(a)(3) sets forth sample language that a creditor may use to fulfill its duty under the UCC to provide a debtor with notice of his or her right to redeem before a creditor may dispose of collateral. In contrast to the right to cure, which we discuss below, the right to redeem requires that a debtor be given the opportunity to pay off any outstanding balance and retake possession of repossessed collateral before the creditor sells it. § 4–9–614(a)(1). As explained in official comment 3 to section 4–9–614, this so-called "safe-harbor" language does not need to be included in a valid notice of the right to redeem; instead, the language is merely included in the statute as an aid to creditors to provide certainty that the form of notice they use will not later be found to have been insufficient. See § 4–9–614(a)(2) ("A particular phrasing of notification is not required.").

¶ 29 Account Brokers argues that the inclusion of the "safe-harbor" language in the undated letter to Hassler cannot be viewed as evidence of Norlarco's subjective intent to accelerate Hassler's debt because Norlarco included the language solely to comply with its UCC duty to provide Hassler with notice of his right to redeem. Account Brokers contends that the letter did not amount to a demand for full payment, but instead merely informed Hassler of his right to redeem.

¶ 30 Irrespective of Norlarco's unknown subjective intent, we fail to see a distinction between a demand for full payment and notice that Hassler could only retake possession of his vehicle by paying the entire amount owed on the loan. With respect to the invocation of an optional acceleration clause, nothing in our case law nor the persuasive authority from other jurisdictions suggests that acceleration turns on the subjective intent of the creditor. Instead, whether acceleration is unequivocal should be viewed from the perspective of the debtor. See 5 A.L.R.2d 968, § 4[a] (explaining that the act must be so clear and unequivocal as "to leave no doubt" in the mind of the debtor that the creditor has elected to accelerate the debt).

¶ 31 Account Brokers claims that this is an unfair result because Norlarco was merely complying with its statutory duty to provide Hassler with notice of his right to redeem the repossessed collateral. Account Brokers contends that if providing notice of the right to redeem amounts to acceleration, then no creditor can ever foreclose on collateral without first accelerating the underlying debt, which it claims is antithetical to the flexibility that the UCC provides a creditor in selecting its remedy. This argument, however, ignores the fact that the "safe-harbor" language in section 4–9–614(a)(3) is merely provided as a model, and thus there is no statutory prohibition precluding a creditor from fulfilling its obligation of providing notice of the right to redeem under section 4–9–614 without acceleration.[9] This can easily be accomplished by informing the debtor that he or she may redeem the repossessed collateral by simply becoming current on the lapsed installment payments. Here, Norlarco did not state that Hassler could redeem by paying the missed installments and instead used the "safe-harbor" language, which demands that the debtor pay the entire balance of the loan and thus had the effect of accelerating the debt. We conclude that there could have been "no doubt" on the part of Hassler that the entirety of his loan was due following both repossession of his vehicle and receipt of the repossession letter. Therefore, Nor-

9. Official comment 2 to section 4–9–623, C.R.S. (2011) (the section that sets forth the right to redeem), makes clear that a debt need not be accelerated before collateral is foreclosed upon and that, if a debt has not been accelerated, redemption prior to disposition only requires re- payment of the outstanding balance: "To redeem the collateral a person must tender fulfillment of all obligations secured, plus certain expenses. If the entire balance of a secured obligation has been accelerated, it would be necessary to tender the entire balance."

larco invoked its contractual option to accelerate the remaining debt.

¶ 32 Second, Account Brokers argues that even if Norlarco attempted to accelerate the debt, any attempt to do so was improper under the terms of the parties' agreement and the UCCC requirement that a debtor receive notice of the right to cure at least twenty days before a debt repayable in installments may be accelerated. The acceleration clause in the parties' security agreement, found in Paragraph 10, stated: "When you are in default and *after expiration of any right you have under applicable state law to cure your default, we can require immediate payment of your outstanding balance* under the Plan without giving you advance notice." (Emphasis added). Thus, under the express terms of the parties' security agreement, Norlarco could not require payment of the remaining balance that had yet to become due until (1) Hassler defaulted and (2) Hassler's statutory right to cure the default expired. In other words, although the parties stipulate that Hassler was in default in May 2001, the remaining installments that had yet to become due could not be validly accelerated and would not become due until Hassler's statutory right to cure had expired.

■ ¶ 33 The requirement that Hassler be afforded an opportunity to cure his default prior to acceleration, as set forth in the parties' acceleration clause, is consistent with Colorado law, which requires that all consumer debtors receive such protection. § 5–5–111, C.R.S. (2011). Under the UCCC, which applies in this case,[10] the "right to cure" is a term of art intended to protect debtors that default on consumer credit transactions. See *id.; see also Aetna Fin. Co. v. Summers,* 642 P.2d 926, 928 (Colo. 1982). The right to cure is intended to provide a debtor that is in default with a statutory window to catch up on missed payments

without being subjected to immediate acceleration or repossession. *See* § 5–5–111(1); *Green Tree Fin. Serv. Corp. v. Short,* 10 P.3d 721, 723 (Colo.App.2000). Under this protection, upon a default as defined by the terms of the parties' agreement, the creditor may not repossess the collateral or accelerate the debt until twenty days after providing the creditor with notice of the right to cure. § 5–5–111(1).

¶ 34 Thus, Account Brokers argues that Norlarco could not have validly accelerated Hassler's debt because the record does not reflect whether Norlarco provided Hassler with notice of his right to cure his default, as required by section 5–5–111(1), before repossessing the vehicle or accelerating the debt. This unknown fact, however, is irrelevant to the resolution of the present matter because, irrespective of whether Norlarco provided Hassler with notice of his right to cure, Account Brokers' present claim would be barred by the statute of limitations. If Norlarco did provide Hassler with notice of his right to cure, then Norlarco would have been entitled, under Colorado law and the terms of the parties' agreement, to accelerate the remaining debt when it did so in its undated letter. Conversely, if Norlarco failed to provide Hassler with notice of his right to cure, any subsequent attempt to accelerate was wrongful under both section 5–5–111(1) and the explicit terms of the parties' security agreement, and it would be improper to allow Norlarco's successor-in-interest to benefit from such wrongful conduct by now claiming that the debt was never properly accelerated and thus never accrued.

■ ¶ 35 Moreover, because this issue was not raised by Account Brokers before the county court, we hold that it was not preserved for appeal and accordingly decline to address it. *Paine, Webber, Jackson & Curtis, Inc. v. Adams,* 718 P.2d 508, 514

10. The UCCC and the rights and remedies thereunder apply generally to "consumer credit transactions," which are statutorily defined to include consumer credit sales. *See* § 5–1–301(12), C.R.S. (2011). Further, a "consumer credit sale" is defined as a sale of consumer goods on credit by a commercial creditor to a non-organizational buyer, where the amount financed is no more than $75,000. *Id.*

In the present matter, Hassler is an individual who purchased a car for personal use pursuant to a security agreement from Norlarco, a commercial creditor, for $28,565.25 in financing. Consequently, the transaction was a "consumer credit sale" and is therefore subject to the regulations and protections set forth in the UCCC, including the statutory right to cure.

(Colo.1986); *Stevenson v. The Hollywood Bar & Café, Inc.*, 832 P.2d 718, 721 n. 5 (Colo.1992) ("Arguments never presented to, considered or ruled upon by a trial court may not be raised for the first time on appeal."). Thus, we deem any potential defects related to Hassler's statutory and contractual right to receive notice of his right to cure to be waived.

¶ 36 Finally, Account Brokers argues that even if Norlarco's repossession and mailing of the undated foreclosure letter evinced an intent to invoke its contractual option to accelerate, the monthly statements that it continued to send Hassler showing that it had not accelerated rendered any prior attempt to accelerate equivocal—and thus legally ineffective. While the county court was presented with evidence that Norlarco sent monthly loan statements to Hassler following repossession for billing on the missed monthly installments, we hold that this later conduct was insufficient to reverse Norlarco's prior acceleration. To determine whether the invocation of the acceleration clause was unequivocal, we look to see whether some *act* of the creditor amounted to a clear manifestation of its intent to accelerate. *Moss*, 772 P.2d at 628 ("[T]he obligee must perform some clear, unequivocal affirmative act evidencing his intention to take advantage of the accelerating provision."). Accordingly,

the creditor's course of conduct following acceleration is irrelevant. Again, following repossession and receipt of the repossession letter, Hassler was on notice that he could only retake possession of his vehicle by repaying the entire amount owed on the loan. Any contradictory action that Norlarco may have later taken was insufficient to un-ring this bell.

¶ 37 Thus, we hold that Norlarco accelerated the remaining balance on the loan by demanding full payment in the repossession letter that it sent to Hassler shortly after repossessing his vehicle on October 30, 2001.

¶ 38 Having determined the approximate date that Norlarco accelerated the remaining balance of the loan, we decline to address whether Norlarco's claim for the accelerated debt accrued on the date that the debt was accelerated or on the date that Norlarco was first permitted to accelerate the debt. This issue is irrelevant to the resolution of the present matter because the undated letter was sent more than six years before the initiation of the present action on May 7, 2008. Therefore, because either date was more than six years prior to the filing of the present action, we need not determine the precise date on which the present action accrued. Consequently, we reserve this issue for another day.[11]

11. Although we decline to address this issue, we note that prevailing Colorado case law, decided prior to Colorado's adoption of the UCC, is at odds with the rule adopted by a majority of states in determining the accrual date for the cause of action to recover a debt that is accelerated at the option of the creditor. See *Lovell v. Goss*, 45 Colo. 304, 101 P. 72 (1909). Typically, a security agreement will provide that a creditor may elect to accelerate at any time after the debtor defaults. William H. Lawrence et al., *Understanding Secured Transactions* § 17.01[B] (4th ed. 2007). Under such terms, there may be a period of time between the date on which the creditor could accelerate and the date on which the creditor elects to accelerate.

Under the majority rule, the cause of action for such accelerated debt accrues on the date that the creditor elects to accelerate. *See, e.g., Bay Area Laundry*, 522 U.S. at 209 n. 5, 118 S.Ct. 542 (interpreting federal law to hold that "[t]he statute of limitations on an accelerated debt runs from the date the creditor exercises its acceleration option, not earlier"); *United States v. Agri Servs., Inc.*, 81 F.3d 1002, 1005 (10th Cir.1996) (interpreting New Mexico law to hold that "ac-

crual occurs upon acceleration"). In contrast, in 1909, we held that, where a creditor elects to accelerate the entire debt, the accrual of the cause of action relates back to the date that the creditor was first lawfully permitted to accelerate the debt. *Lovell*, 101 P. at 74–75.

Under both the statutory scheme and the terms of the parties' agreement, following default, Norlarco would have been entitled to accelerate at any time following twenty days after providing Hassler with notice of his right to cure under section 5–5–111(1) of the UCCC. Of course, in the present matter, because the record does not contain any evidence of whether Norlarco provided Hassler with notice of his right to cure, the date on which Norlarco was first entitled to accelerate the present debt is unknown. However, because the date that Norlarco was first entitled to accelerate the loan necessarily occurred before Norlarco did in fact accelerate the loan, which we hold occurred shortly after October 30, 2001, the statute of limitations for the present action would have expired under either the *Lovell* rule or the rule applied by a majority of jurisdictions in the wake of their adoption of the UCC.

¶ 39 Thus, Norlarco's cause of action accrued and the statute of limitations was triggered on either the day Norlarco was first entitled to accelerate or the day that Norlarco did in fact accelerate the debt in its undated letter sent shortly after repossession on October 30, 2001. Given that either date was more than six years before Account Brokers filed suit on May 7, 2008, the statute of limitations bars the present action.

## IV. Conclusion

¶ 40 For these reasons, we reverse the district court's order. We remand the case to the district court to return it to the county court for proceedings consistent with this opinion.

Justice MÁRQUEZ dissents.

MÁRQUEZ, J., concurring in part and dissenting in part.

¶ 41 I agree with the majority that a party's cause of action on installment debt accrues on the date the debt "becomes due" under the parties' agreement, and not when the debt was liquidated or became determinable. *See* Maj. op. ¶¶ 4, 16–21; § 13–80–108(4), C.R.S. (2011) (stating that a cause of action on a "debt, obligation, money owed, or performance" shall "accrue on the date such debt, obligation, money owed, or performance becomes due"); *see also* § 4–3–118, C.R.S. (2011). I further agree that the debt for each installment becomes due when an installment payment is missed, unless the entire debt obligation is validly accelerated under the parties' agreement. Maj. op. ¶¶ 4, 22; *see also* § 4–3–118; *Currigan v. Stone*, 136 Colo. 326, 331, 317 P.2d 1044, 1047 (1957) (stating that causes of action accrue separately on the dates when each missed installment payment became due); *In re Church*, 833 P.2d 813, 815 (Colo.App.1992). Finally, I agree with the majority that to invoke an optional acceleration provision, a creditor must perform some clear, unequivocal affirmative act evidencing the creditor's intention to accelerate a debt. Maj. op. ¶¶ 24–25; *see also Padilla v. Ghuman*, 183 P.3d 653, 659 (Colo.App.2007) ("Where an acceleration provision is exercisable at the option of the [creditor], the [creditor] *must perform some*

*clear, unequivocal affirmative act* evidencing the [creditor's] intention to take advantage of the acceleration provision." (emphasis added)).

¶ 42 I write separately because I disagree with the majority's conclusion in Part III.B that, as a matter of law, Norlarco acted unequivocally to accelerate all future installment payments owed under the loan by (1) exercising its right as a secured party to repossess the car pursuant to Colorado's version of the Uniform Commercial Code (U.C.C.), coupled with (2) sending notice to Hassler of its intent to dispose of the collateral, as required by section 4–9–614, C.R.S. (2011) of the U.C.C., using language adopted by the General Assembly as sufficient to inform a consumer debtor of the right to redeem collateral under section 4–9–623, C.R.S. (2011). *See* Maj. op. ¶ 26. The majority's conclusion is unsupported by the parties' loan agreement, and ignores that a consumer loan and a lien give rise to distinct legal rights that can be enforced independently under separate statutory schemes. Even where, as here, an entity is both a creditor and a secured party in a particular transaction, the entity's mere exercise of its legal remedies under Article 9 of the U.C.C. as a secured party does not, without more, establish as a matter of law that it has simultaneously invoked an independent contractual right as a creditor to accelerate the debt in accordance with Colorado's Consumer Credit Code. *See, e.g., Rogers v. Assocs. Commercial Corp.*, 129 Ariz. 499, 632 P.2d 1002, 1003, 1007 (Ariz.Ct.App.1981).

¶ 43 I believe the relevant inquiry for determining whether Account Brokers' cause of action is time-barred is not whether Norlarco did or did not exercise its option to accelerate Hassler's debt, *see* Maj. op. ¶ 23, but rather, whether it did so on or before May 7, 2002 (or six years before it filed its claim in this case on May 7, 2008), and if not, whether Account Brokers' claim seeks to recover any unaccelerated debt that had "become due" on or before May 7, 2002. In my view, the record supports the district court's conclusion that Norlarco proceeded solely as a secured party under the U.C.C. and never exercised its right as a creditor to accelerate

the loan. *See* Dist. Court Order ("Although the loan did have an acceleration clause that would have made the entire amount due on the date of default, Appellee Account Brokers' assignor Norlarco was acting in accordance with the Uniform Commercial Code, C.R.S. 4–9–601 et seq. when it mitigated its damages by disposing of the collateral in a 'commercially reasonable manner' and attempting to collect only the deficiency debt rather than the entire loan amount."). I further believe the record clearly establishes that Account Brokers' claim does not seek to recover any debt that had "become due" on or before May 7, 2002. Therefore, I would hold that Account Brokers' claim was timely filed.

## I.

¶ 44 The "Loanliner" open-end voucher and security agreement that Hassler entered into contained both loan and security interest provisions. Paragraph 10 of the agreement set forth the consequences of default. Specifically, this paragraph permitted Norlarco to accelerate all future installment payments owed under the loan without notice to Hassler so long as Norlarco complied with applicable state law to cure:

> When you are in default and after expiration of any right you have under applicable state law to cure your default, *we can require* immediate payment of your outstanding balance under the Plan without giving you advance notice.

(Emphasis added.) Under section 5–5–111(1), C.R.S. (2011), of Colorado's Consumer Credit Code, Norlarco could not accelerate the debt under this contractual provision until twenty days after giving Hassler a notice of the right to cure in section 5–5–110. Section 5–5–110 expressly requires such notice to conspicuously state the "name, address and telephone number of the creditor to which payment is to be made, a brief identification of the credit transaction, the right to cure the default, and *the amount of payment* and date by which payment must be made to cure the default." § 5–5–110(2), C.R.S. (2011)

(emphasis added). The record here does not reflect that Norlarco ever sent Hassler such notice.

¶ 45 Paragraph 10 also provided that if Hassler defaulted on the loan, Norlarco could take possession of the car, sell it, and then "apply the money [from the sale] to any amounts you owe us."[1] Before *disposing* of the collateral, the U.C.C. required Norlarco to send Hassler a notice substantially similar to the one contained in section 4–9–614, informing him how to regain possession of the collateral (the "safe-harbor" notice). Upon sale of the collateral, the parties' agreement and section 4–9–615(a) of the U.C.C. required Norlarco to apply the sale proceeds to the amount Hassler owed Norlarco under the loan agreement.

¶ 46 The district court concluded that Norlarco proceeded merely as a secured party by exercising its rights under the secured transaction provisions of the U.C.C. and did not accelerate the debt. The record supports this conclusion. Specifically, Norlarco repossessed the car pursuant to section 4–9–609. Then, in an undated letter that tracked virtually verbatim the safe-harbor notice provided in section 4–9–614, Norlarco informed Hassler of his legal rights to redeem the repossessed collateral. *See* §§ 4–9–614, –623, C.R.S. (2011). Upon the sale of the car, the June 2002 month-end account statement reflects that, as required by the parties' agreement and section 4–9–615(a) of the U.C.C., Norlarco applied the sale proceeds to reduce the loan balance, which necessarily included the "delinquent amount" (i.e., the unpaid portion of the loan balance then delinquent) and the "repayment amount" (i.e., the unpaid portion of the loan balance currently due but not yet delinquent).

¶ 47 The majority nevertheless interprets Norlarco's efforts to exercise its remedies under the *U.C.C.*—repossession coupled with sending the safe-harbor notice required prior to disposition of the collateral—as acts that unequivocally invoked Norlarco's separate contractual right under the loan agreement to accelerate all future installment payments.

---

1. Before *repossessing* the car, section 5–5–111 required Norlarco to give Hassler notice of an opportunity to cure his defaults. § 5–5–111(1).

The record does not reflect whether this notice to cure was provided; however, Hassler does not raise this issue.

Nothing in the loan agreement, the U.C.C., or the Consumer Credit Code, states that the mere act of repossessing collateral automatically results in the acceleration of the debt obligation secured by that collateral. Moreover, a secured party's use of the U.C.C. statutory safe-harbor notice regarding a debtor's right to redeem repossessed collateral does not evince an unequivocal intent to accelerate the entire debt obligation.

¶ 48 In this case, Norlarco's undated letter to Hassler was titled "NOTICE OF OUR PLAN TO SELL PROPERTY." It then tracked, almost verbatim, the statutory safe-harbor language [2] provided in section 4-9-614 for the required notification before disposition of collateral:

> We will sell the collateral [the 1994 Porsche] at private auction sometime after *November 10th 2001.*
>
> The money that we get from the sale (after paying our costs) will reduce the amount you owe. If we get less money than you owe, you will still owe us the difference. If we get more money than you owe, you will get the extra money, unless we must pay it to someone else.
>
> *You can get the property back at any time before we sell it by paying us the full amount you owe (not just the past due payments), including our expenses. To learn the exact amount you must pay, call us* at [Norlarco's phone numbers].

(Second emphasis added.)

¶ 49 The majority holds that a secured party's use of the recommended statutory language emphasized above serves, as a matter of law, as the party's unequivocal invocation of a wholly independent contractual right to accelerate the entire debt obligation. This language, however, was adopted by the General Assembly as recommended standard form language that satisfies the notice requirements of section 4-9-614 before disposition of collateral. It is purposefully ambiguous as to whether acceleration of all future loan payments has in fact occurred, allowing it to be used in a variety of factual situations (and thus rendering it a useful safe harbor). The critical phrase "full amount you owe" does *not* necessarily mean "the entire balance of the loan," Maj. op. ¶¶ 14, 30-31, as the majority incorrectly infers. Rather, this phrase can cover situations in which the entire debt has not been accelerated. For example, depending on the parties' agreement, the phrase "full amount you owe" can refer to the debtor's missed monthly payments plus the presently due monthly payment; the missed monthly payments plus the expenses associated with repossession; the missed monthly payments plus other monies owed by the debtor under the parties' loan agreement (e.g., taxes, fees, insurance premiums); [3] or some combination of the foregoing. Importantly, the statutory safe-harbor language under section 4-9-614 does not require the secured party to specify the amount the consumer debtor owes. Rather, it directs the consumer debtor to contact the secured party "to learn the exact amount you must pay." By contrast, before a debt obligation under a consumer credit transaction may be *accelerated* under the Consumer Credit Code, the creditor must provide the actual "*amount of payment* and date by which payment must be made to cure the default." § 5-5-110(2) (emphasis added). Al-

---

**2.** Section 4-9-614(a)(3) provides that the following statutory language provides sufficient notice in a consumer-goods transaction:

> We will sell [*describe collateral*] at private sale sometime after [*date*]. A sale could include a lease or a license.
> The money that we get from the sale (after paying our costs) will reduce the amount you owe. If we get less money than you owe, you [*will or will not, as applicable*] still owe us the difference. If we get more money than you owe, you will get the extra money, unless we must pay it to someone else.
> *You can get the property back at any time before we sell it by paying us the full amount you owe*

> *(not just the past due payments), including our expenses. To learn the exact amount you must pay, call us* at [*telephone number*] or write us at [*secured party's address*].

§ 4-9-614(a)(3) (Fourth emphasis added.)

**3.** For example, the parties' agreement in this case provided, "If you do not pay the taxes or fees on the property when due or keep it insured, we may pay these obligations, but we are not required to do so. Any money we spend for taxes, fees or insurance will be added to the unpaid balance of the advance [i.e., the original loan amount] and you will pay interest on those amounts at the same rate you agreed to pay on the advance."

though the undated notice to Hassler does not specify any particular "amount of payment" due (as would be required by the Consumer Credit Code), the majority leaps to the conclusion that the purposefully ambiguous phrase "full amount you owe" can mean nothing other than the entire debt obligation under the parties' agreement, and that therefore, as a matter of law, the use of this statutory phrase constitutes a clear and unequivocal act invoking the optional acceleration provision under the loan agreement. I disagree with the majority's conclusion because it distorts the intent of the safe-harbor notice under section 4–9–614; moreover, the critical phrase relied on by the majority can be readily interpreted to cover factual scenarios that do not involve acceleration.

¶ 50 In my view, any possible doubt that the safe-harbor notice contained in section 4–9–614 does *not* automatically accelerate the debt is eliminated by official comment to section 4–9–623. Section 4–9–623 provides that to redeem repossessed collateral, the debtor "shall tender ... [f]ulfillment of all obligations secured by the collateral." Official comment 2 elaborates:

> To redeem the collateral a person must tender fulfillment of all obligations secured, plus certain expenses. *If the entire balance of a secured obligation has been accelerated, it would be necessary to tender the entire balance.*

(Emphasis added.) This comment clarifies that the phrase "[f]ulfillment of all obligations secured by the collateral" can encompass situations in which the underlying debt has *not* been accelerated; otherwise the comment regarding acceleration would not be written in the conditional. Thus, the mere use of the corresponding safe-harbor language in section 4–9–614 to inform a debtor of his right to redeem the collateral under section 4–9–623 by "paying us the full amount you owe," does not necessarily mean that the entire debt, in fact, has been accelerated. The majority's conclusion to the contrary imports a meaning into the safe-harbor language of section 4–9–614 that is wholly

unsupported by the statutory language and scheme.[4]

¶ 51 Finally, I note that the series of monthly statements received by Hassler after the car was repossessed and the safe-harbor notice issued further undermine the majority's conclusion that Norlarco unequivocally accelerated the entire debt obligation. *None* of these subsequent monthly account statements suggested that either the "delinquent amount" on the loan (i.e., the amount of the loan that has become past due) or the "repayment amount" owed (i.e., the amount of the loan that has "become due" but not yet delinquent) equaled the entire outstanding loan balance. Rather, these statements continued to reflect a "delinquent amount" based on installment payments missed to that point, and a "repayment amount" of the $523 monthly installment under the agreement.

¶ 52 For these reasons, I disagree with the majority's conclusion that Norlarco's mere act of repossessing the collateral pursuant to section 4–9–609, coupled with sending the safe-harbor notice required by section 4–9–614(a)(3), unequivocally invoked its independent contractual right under the loan agreement to accelerate the entire debt obligation secured by the collateral.

## II.

¶ 53 I now turn to whether Account Brokers' cause of action, filed on May 7, 2008, is barred by the applicable six-year statute of limitations. § 13–80–103.5(1)(a); § 4–3–118. Account Brokers' claim would be time-barred to the extent it includes any debt that had "become due" (i.e., the cause of action accrued) on or before May 7, 2002. *See* § 13–80–108(4), C.R.S. (2011). In other words, if Norlarco accelerated the debt on or before that date, or alternatively, if Account Brokers' claim seeks to recover any installment payments that had become due on or before May 7, 2002, then any claim for such debt is time-barred. The record shows that neither is true.

---

4. The majority's suggestion that a secured party could simply deviate from the safe-harbor language to avoid invoking acceleration, *see* Maj. op. ¶ 30, undercuts the very purpose behind safe-harbor language. Under today's holding, a secured party who seeks refuge in the safe-harbor language now risks unintentionally invoking any separate contractual right to accelerate the debt.

¶ 54 As discussed in detail above, Norlarco did not act unequivocally to accelerate all future installment payments at any time before May 7, 2002. Contrary to the majority's conclusion, Norlarco acted as a secured party to exercise remedies under the U.C.C., and such action cannot, without more, automatically and unequivocally invoke a party's separate contractual right to accelerate all future installment payments under the parties' loan agreement.

¶ 55 Because Norlarco did not accelerate the debt on or before May 7, 2002, Account Brokers' claim would be time-barred, and only partially so, only if the claim seeks to recover any installment payments that had "become due" on or before May 7, 2002. The uncontroverted record evidence establishes, however, that Account Brokers' claim does not include any such payments. The June 2002 month-end account statement shows that as of June 1 the "delinquent amount" (i.e., the missed payments that had "become due") was at most $6035. The same statement reflects, however, that on June 4, following the sale of the collateral, Norlarco applied the $17,500 in proceeds to reduce the loan balance, which necessarily included the full amount that had "become due." [5] Because the sale proceeds paid off in full the amount that had "become due" as of May 7, 2002, under the loan (i.e., $6035), Account Brokers' claim for the deficiency amount does not seek to recover any debt that had "become due" on or before May 7, 2002.

¶ 56 Accordingly, I would affirm the district court's order that Account Brokers' lawsuit was not barred by the statute of limitations.

---

5. The majority suggests that, if acceleration did not occur, Norlarco violated the U.C.C. by not giving Hassler the proceeds from the collateral sale in excess of the amount that had "become due" when the sale occurred. Maj. op. ¶ 26 n. 8. Hassler has never raised such an argument. Moreover, as the majority correctly notes, under Paragraph 10 of the parties' agreement, Hassler remained liable for any remaining deficiency af-ter application of the sale proceeds to the amount that had "become due." Maj. op. ¶ 7. Account Brokers seeks to recover only this deficiency amount, which did not become due (i.e., under the parties' agreement, Hassler did not become liable for this deficiency) until after the sale of the collateral, or within the six-year statute of limitations period.